PARKER-QUAKER CORPORATION ET AL. *v.* ALEXANDER
YOUNG, BUILDING INSPECTOR OF THE TOWN
OF WEST HARTFORD

SUPERIOR COURT          HARTFORD COUNTY          FILE No. 129399

Memorandum filed August 2, 1962

*Richard T. Scully* and *Ribicoff & Kotkin,* of Hartford, for the plaintiffs.

*Nicholas A. Lenge,* corporation counsel, of West Hartford, for the defendant.

DEVLIN, J.  The plaintiffs in this action seek to restrain the defendant, building inspector of the town of West Hartford, from revoking three building permits granted for the erection of structures on the south side of Farmington Avenue between Quaker Lane and Lancaster Street.

Plaintiffs acquired the property in May of 1961 from three different owners and planned to erect three apartment buildings, one five stories high and the other two, six stories.  On August 1, 1961, application was made to the zoning board of appeals for a variance with respect to average lot width requirements to permit the erection of the three units, and a plot plan was submitted at the same time.  After a public hearing on September 13, notice of approval of the variance was given on the

15th. In November, 1961, the plans had been completed to the extent necessary to file for a building permit, and on November 22 three permits were issued: one for an eighteen-unit apartment building five stories high, and two others each for a twenty-two-unit apartment building six stories high. Basement garages were provided for in each permit. Immediately thereafter, tenants were evicted, the buildings demolished or rendered uninhabitable and contracts entered into for the construction work.

On March 24, 1962, the plaintiffs received a letter from the defendant stating that in accordance with a directive from the director of public works and legal opinion 200A of the corporation counsel he intended to revoke the building permits. A temporary injunction restraining such action was granted, and in this hearing it is sought to make it permanent. The chief claim made by the defendant is that a building permit issued under a mistake of fact or in violation of law confers no vested right on the permittee and it may be revoked at any time even though work has been done, expenditures incurred or contracts entered into in reliance thereon.

Section 105-6b of the building code provides any permit "may be revoked for any material fraud or misrepresentation or any violation of any ordinance, statute or order." On the facts presented, there is no basis for a finding of any material fraud or misrepresentation, and the question is whether the permits were issued in violation of any law.

The reason given for the revocation was "because the proposed construction would violate the zoning regulations pertaining to story height." The property is situated in residence zone D-1, which provides for maximum heights of three stories and forty feet. When the parties were before the zoning

board of appeals, the question whether a variance was necessary to permit the building to have more than three stories was discussed. At that time, it was the advice and interpretation of the building inspector, based on the consistent practice of the building department and the opinions of three different corporation counsel, that the building could exceed the height limits if they complied with the provisions in the exceptions to the regulations.

Section 17.1.22, dealing with exceptions to regulations, provides: "A. (3) Any portion of a building may be erected to a height in excess of the respective height limits as herein prescribed provided such portion of such building is set back from all required yard and lot lines and established building lines, 1 foot for each 2 feet of such additional height."

The question arose whether the exception applied only to the footage limitation or whether it also allowed a building over three stories. The problem arose in 1952, when the then corporation counsel ruled that a building over three stories was permissible. Again in 1957, the building inspector asked for a ruling. It was his interpretation "that an apartment building can go to ten stories high" if the provisions in the exception ordinance were complied with. The corporation counsel at that time ruled that this was a correct interpretation. Again in 1960, the town planner requested, through the town manager, an opinion as to whether the "height exception [allowed] an exception to the three story limit," and the present assistant corporation counsel referred him to the opinion given in 1957. This had been the policy and the understanding of the defendant in the years he had been connected with the building department.

The change in the situation came in February of 1962 when, apparently at the request of a member

of the town council, another opinion was sought. At this time there was a complete reversal in the ruling in that the exception was held to apply only to the footage limitation. As a result of this, the defendant was ordered through his superiors to notify the plaintiffs of the intention to revoke the permits. No sound reason was advanced in support of this change in position.

The interpretation placed upon the ordinance by the latest opinion cannot be sanctioned. The height limitation set forth in the schedule is expressed in two standards; one in terms of stories and one in terms of feet. The exception provides that upon meeting a setback requirement from the various lines of one foot for each two feet of additional height, a building may be erected to a height in excess of the respective height limits set out in the schedule. It refers to "respective height limits" and connotes severability applicable to either one of the expressed limitations. It does not say it is applicable only to the footage limitation. Under the construction called for by the defendant, it would be possible to increase the height of the building to eighty feet, if the proper conditions are met, but at no time could the building be more than three stories high. The height of the ceilings under such an interpretation is hard to envisage and would create an impractical situation.

When two constructions are possible, courts will adopt the one which makes the statute effective and workable, and not one which leads to difficult and possibly bizarre results. *Bridgeport* v. *Stratford*, 142 Conn. 634, 644.

The defendant contends, however, that under the accepted law of this state there is no vested property right in a mere building permit. Reliance is placed on the rule as set out in the cases of *Fitzgerald* v.

*Merard Holding Co.,* 110 Conn. 130, 141, and *Graham Corporation* v. *Board of Zoning Appeals,* 140 Conn. 1, 4. By the weight of authority, however, where a building permit has been properly obtained it may not arbitrarily be revoked, particularly where on the faith of it the owner has incurred material expense and substantial liabilities. 8 McQuillin, Municipal Corporations (3d Ed. Rev.) pp. 360, 364; 9 Am. Jur. 204, § 8; note, 40 A.L.R. 928. In the *Fitzgerald* case, supra, no permit authorizing construction was ever issued, and the court refused to permit the defendant to take refuge behind the expenditures it had made in an attempt to circumvent the contemplated regulations. In the *Graham* case, supra, a permit was issued, but the permittee was aware of tireless opposition and, in anticipation that a review would be sought, hastily brought in power shovels and poured concrete footings. It was held that the hurried incurring of expenditures by the plaintiff did not commend itself to any equitable consideration and that the difficulty in which the plaintiff found itself in the matter of expense was one of its own deliberative choice.

In this case, prior to the notice of an intention to revoke, the plaintiffs had done considerable excavation; a storm sewer was installed and inspected by the town; another piece of property was acquired in order to straighten out the south line of the property; all of the buildings on the property had been vacated by their tenants; all of these buildings had been demolished to the extent that they were not habitable except at a cost equal to the cost of construction of a new building; batter boards were set up for the corners of the proposed structure; a mortgage commitment calling for the completion of the buildings by the end of 1962 was accepted, including a fee of $24,000 which is not returnable in the event the buildings are not completed and the mort-

gage is not executed; expenses for engineering and architectural fees have been incurred; and contractual obligations to subcontractors amounting to approximately $60,000 will be lost if the project is abandoned.

As to how far one acting under a valid permit must proceed with the work in order to be protected against a subsequent change, the general rule is that any substantial change of position is sufficient. There is no easy formula to resolve issues of this kind. The ultimate objective is fairness to both the public and the individual property owner. *Tremarco Corporation* v. *Garzio,* 32 N.J. 448, 457. The factual situation in each case must be dealt with separately. *Little Falls* v. *Fisk,* 24 N.Y.S.2d 460, 476.

In this case, the permits were valid when issued and during the time demolition and construction work was in progress. The substantial change in position during this period was sufficient to create a vested right to proceed, and equitable considerations favor the position of the plaintiffs. The defendant acted illegally in ordering the permits revoked upon the ground relied upon. *Crow* v. *Board of Adjustment,* 227 Iowa 324, 327.

The matters set up in the special defenses are not only lacking in proof but also did not enter into the reason given by the defendant for revoking the permits.

It is found that these building permits were not granted under any material fraud or misrepresentation and were not in violation of any ordinance, statute or order.

Judgment may enter making permanent the injunction restraining the defendant, his servants, employees and agents from revoking building permits Nos. 23524, 23525 and 23526.