INTERSTATE POWER COMPANY OF NEBRASKA, APPELLANT, v. CITY OF AINSWORTH ET AL., APPELLEES.

FILED OCTOBER 20, 1933. No. 28934.

420

*Flansburg, Lee & Sheldahl, Julius D. Cronin* and *George A. Farman, Jr.,* for appellant.

*William M. Ely* and *Dressler & Neely, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and SHEPHERD, District Judge.

GOOD, J.

This is a suit to enjoin performance of a contract for the construction of an electric light and power plant and electric distribution system in and for the city of Ainsworth, to be paid for only out of future net earnings of the plant. The trial court denied the injunction, and plaintiff has appealed.

Plaintiff is a taxpayer in the defendant city, in which it owns and operates an electric distribution system. The contract in question provides for the construction of a plant and distribution system at a cost of $90,629, plus $5,200 engineering fees, all of which is to be paid out of future earnings of the plant, title to which, until fully paid for, is to remain in the contractor, Fairbanks-Morse Construction Company. The contract provides that the city is to operate the plant, keep it in repair, insured for the benefit of the contractor, and that the city shall carry compensation insurance and hold contractor harmless from actions for damages, growing out of the operation of the plant, until paid for. The project has not been authorized by the legal voters of the city; nor does it have the funds on hand available for the construction of an electric plant; nor does the city now own any electric

light or power plant or electric distribution system. The evidence shows that the actual cash value of the proposed plant to be constructed is $74,000, and that the cost to the city, including engineering fees, will be about $96,000. In addition to this, the contract provides for the issuance of warrants, payable out of net earnings when the plant is constructed and ready for operation, and that these warrants shall draw interest at the rate of 6 per cent. per annum from date until paid.

Among other grounds on which plaintiff bases its action is that the city does not have authority to make such a contract, and that it is, therefore, void, and for that reason its performance should be enjoined. It becomes important, therefore, to ascertain the extent of the city's power with relation to such a contract.

The rule with respect to powers of municipal corporations is stated in 1 McQuillin, Municipal Corporations (2d ed.) sec. 367, in this language: "A municipal corporation, therefore, possesses no powers or faculties not conferred upon it, either expressly or by fair implication, by the law which created it, or by other laws, constitutional or statutory, applicable to it. It is a creature of the law established for special purposes and its corporate acts must be authorized by its charter or other laws applicable thereto.

"Every investigation, therefore, of its powers must be conducted from the standpoint of such laws. Wherefore, the usual formula, invariably supported by judicial utterances and judgments, in substance is: That the only powers a municipal corporation possesses and can exercise are: (1) Those granted in express terms; (2) those necessarily or fairly implied in, or incident to, the powers expressly granted; and (3) those essential to the declared objects and purposes of the municipality, not merely convenient, but indispensable." The above rule is quoted and approved in *Consumers Coal Co. v. City of Lincoln,* 109 Neb. 51. In respect to implied authority, it is held in that case: "Where a certain power is conferred upon

a municipality and the method of its exercise is prescribed, such method constitutes the measure of the power."

In *City of Ft. Scott v. Eads Brokerage Co.*, 117 Fed. 51, it was held: "The prescription, by the statutes, under which a municipality is organized or acting, of the manner in which it shall exercise one of its powers, limits the right to exercise it to that method, and its use in any other way is *ultra vires* of the corporation, and void."

In *Putney Bros. Co. v. Milwaukee County*, 108 Wis. 554, it was held that a contract by the county for the private treatment of an inebriate at a Keeley Institute was not authorized as implied from its general power to provide for paupers and inebriates, the court saying (p. 557): "Thus it appears that the legislature has provided certain methods by which inebriety or habitual drunkenness may be dealt with, and we think it plain that by prescribing certain methods it has excluded other methods, and that the general provisions requiring the county or town to care for and relieve paupers refer to necessary food, clothing, ordinary medical treatment, and the like, and not to medical treatment looking toward the cure of inebriety as a disease."

In *State v. Irey*, 42 Neb. 186, this court held: "A municipal corporation possesses only such powers as are expressly conferred upon it by statute, or are necessary to carry into effect some enumerated power." The rule thus stated is reaffirmed in *State v. Temple*, 99 Neb. 505.

In *People v. Wolper*, 350 Ill. 461, it was held: "Cities have no inherent powers but derive all powers from statutory enactments, which are strictly construed, any fair or reasonable doubt of the existence of a power being resolved against the city, and while power to pass an ordinance need not be wholly derived from a single grant, implied powers are those, only, which are necessarily incident to powers expressly granted."

In *Indiana Service Corporation v. Town of Warren,*

as reported in 180 N. E. (Ind. App.) 14, it was held:

"Where municipal officials are unlawfully expending funds, taxpayer of municipality may sue to prevent such illegal acts.

"Municipality can exercise only powers expressly granted, those implied or incidental to powers expressly granted, and those essential to declared objects of municipality.

"Methods prescribed for exercising power granted to municipality must be pursued."

In *Branham v. Mayor and Common Council of San Jose*, 24 Cal. 585, it was held that a municipal body "could take and exercise only such powers as were conferred upon it by the will of the sovereign, as expressed in the laws creating it."

In view of the rule above announced, we shall now proceed to consider what express or implied powers are granted to the defendant city by the laws of Nebraska.

Defendants contend that express authority to enter into such a contract is contained in Initiated Law No. 324, appearing in chapter 116, Laws 1931. There are expressions and language used in the body of the act which would seem to sustain the contention of defendants, but the scope of the act must be determined from its title. It is a familiar rule that a legislative act is limited in its scope and operation by its title, and a like rule is applicable to a law adopted by the initiative method. A careful examination of the title to the act, which is quite lengthy, clearly discloses that it applies only to such cities or villages as are engaged in the generation, transmission or distribution of electrical energy, and provides that such cities may extend, improve and add to their plants and pay the cost of such extensions, additions or improvements by pledging the future earnings of such plants. Clearly, the act does not apply to a city which does not own any electric light or power plant or distribution system. Neither express nor implied power is conferred by said chapter 116 to acquire an electric light and power plant and pay for it by pledge of future earnings.

Sections 17-601 and 17-602, Comp. St. 1929, confer upon cities the power to erect electric or other light works outside the corporate limits of the city, and provide methods for raising funds for such a plant. These sections are inapplicable to the facts in the instant case, and no attempt was made to proceed thereunder.

Section 18-101, Comp. St. 1929, confers on cities of the second class power to purchase, construct, maintain and improve lighting systems. The succeeding section provides two methods of raising funds to pay for a heating or lighting *plant,* one by direct levy of a tax and the other by a bond issue, but this section does not provide specifically any method for raising funds to maintain and improve lighting systems. Section 18-103, Comp. St. 1929, provides the method which must be followed in issuing bonds to pay for the plant and has no application to raising funds or issuing bonds to maintain or improve the plant. Clearly, these sections do not confer express authority upon the city to acquire an entire light plant in the manner proposed in the instant case.

Defendants place reliance on *Christensen v. City of Fremont,* 45 Neb. 160. That case involved the power of the city to pay for an electric light plant out of funds on hand in its treasury which had been previously raised, in part by direct taxation and in part by accumulation of occupation taxes. There was a sufficient fund in the treasury available to pay for the plant. In the manner provided by law, the city passed a special appropriation ordinance appropriating sufficient funds to pay for the plant. The question was: Had the city power to thus appropriate money on hand for such purpose? The statute then existing authorized cities to purchase electric light plants, and provided two methods of raising funds with which to pay for the same: One by direct tax levy; the other by issuance of bonds which would be paid by direct tax levy. The court took the view that it was a needless formality for the city to resort to a new tax levy or to a bond issue, to be paid by direct tax levy,

to raise funds when the city already had funds available. Referring to the statute authorizing the method of raising funds the court held: "That act, in providing for the levy of a tax and the issuing of bonds for erecting and maintaining a lighting system, provides how money must be raised for the purpose when it is not already available; but where a city already has in its general fund sufficient unappropriated funds, it may appropriate and use those funds for the purpose of erecting a lighting system." The court further held: "A city of the second class having more than 5,000 inhabitants may make special appropriations for improvements at other times in other ordinances than the annual appropriation bill, provided such appropriations first receive the sanction of a majority of the electors either by petition or at an election." In that case the appropriation was authorized by a petition signed by a majority of the electors. That case does not appear to be authority for the contention here made.

Defendants also cite and rely upon *Carr v. Fenstermacher*, 119 Neb. 172. In that case there was involved the power of a city to improve an existing electric light plant by pledging earnings of such plant to pay for the improvement. The then-existing statute authorized cities to acquire and improve electric light plants, and provided two methods for raising funds with which to erect and pay for such plants, but provided no method for raising funds with which to improve an existing plant. It is clear that, where the power is granted to improve a plant and no provision is made for raising the funds with which to make the improvement, the city has the implied power to resort to any proper method for so doing. We think that case is not authority for the contention here made.

Since the adoption of the opinion in *Carr v. Fenstermacher, supra,* the people, by enactment of Initiated Law No. 324, have expressly authorized municipalities to enter into contracts for the improvement of or addition to an

existing plant, and to pay for such improvement or addition by pledging the earnings thereof. That act, however, did not confer express power on municipalities to so acquire an entire new plant.

Defendants argue that there is no distinction to be made between improvement of an existing plant and construction of an entire new plant, and that, if there is implied power to so contract for an improvement of or repair to an existing plant, as was held in *Carr v. Fenstermacher, supra,* there is the same implied power for the construction of an entire new plant.

In view of the language of sections 18-101 *et seq.,* Comp. St. 1929, we think the contention is not well founded. With respect to new plants, power to acquire them is conferred and methods provided for raising funds to pay therefor. With respect to improvements and additions, power is conferred to make them, but no specific method provided for paying for them, and there is good reason for making this distinction. A municipality may be operating a plant when some portion of it gives out, and it is necessary that an improvement or repair be made at once or discontinue the service, which would greatly incommode the inhabitants. There would not be time, without closing the plant, to raise a new fund by taxation or by special levy. Hence, the implied power was left to the city to provide for repair in any reasonable manner that the city, by its constituted authority, might adopt.

In *Van Eaton v. Town of Sidney,* 211 Ia. 986, the supreme court of Iowa had before it the question of power of a city to enter into a contract quite similar to the one here involved. The statutes of Iowa gave to cities and towns "the power to purchase, establish, erect, maintain, and operate within or without their corporate limits * * * electric light or power plants, with all the necessary * * * poles, wires, * * * machinery, apparatus, and other requisites of said works or plants." The statute further provided for the submission of the question to

the voters at a special election and provided for the issuance of bonds for payment of the cost of establishing the plant. The court held in that case that the city did not have the implied power to enter into such a contract. After reviewing the authorities relating to implied power of cities, the court, in the body of its opinion, said (p. 993): "Under these rules, in the case before us, the fact that it may be useful or convenient to the corporation to buy this machinery and pay for it by pledge warrants will not authorize the conclusion that it has the implied power to do so, because it is not absolutely necessary to attain the end sought, the statute providing that it may issue bonds and pay the same by taxation. It follows, therefore, that the contract entered into is void and of no effect."

In view of the authorities hereinbefore quoted, we are of the opinion that the city did not have implied power to construct an entire new light and power plant in the manner attempted in this case. If the city does not possess power, either express or implied, to so contract, then it necessarily follows that the contract entered into was void, and performance thereof should be enjoined as prayed by plaintiff.

The judgment of the district court is reversed and the cause remanded, with directions to that court to enter a decree enjoining performance of the contract.

REVERSED.