EVERETT M. SCHROLL ET AL., APPELLANTS, V. CITY OF BEATRICE, NEBRASKA, ET AL., APPELLEES.

98 N. W. 2d 790

Filed October 30, 1959.  No. 34624.

*Sackett & Sackett* and *Healey, Davies, Wilson & Barlow,* for appellants.

*Crosby, Pansing & Guenzel, Vasey & Rist, Anne P. Carstens,* and *Cline, Williams, Wright & Johnson,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

The plaintiffs in this action are three resident taxpayers and patrons of the municipal electric distribu-

tion system of the city of Beatrice. Also a party plaintiff is Consumers Public Power District, a public corporation organized and existing under the provisions of Chapter 70, article 6, R. R. S. 1943. It purchases electricity at retail from the city of Beatrice and makes payments in lieu of taxes for the benefit of the city.

The defendants are the city of Beatrice, a city of the first class with a population of over 11,000, the mayor, and members of the city council. Also a defendant is the Norris Rural Public Power District, a public corporation organized under Chapter 70, article 6, R. R. S. 1943. It has its principal place of business in Beatrice, Nebraska. Also as parties defendant are the directors of the Norris Rural Public Power District.

Consumers Public Power District will be referred to herein as Consumers. The city of Beatrice will be referred to herein as Beatrice. Norris Rural Public Power District will be referred to herein as Norris.

Plaintiffs bring this as a representative action. They seek a judgment declaring their rights and the rights, status, and legal relations of Beatrice and Norris arising under a purported contract that is the subject matter of this litigation wherein Norris agrees to sell electrical energy to Beatrice.

It is that contract which the individual plaintiffs and Consumers sought to have declared void and its performance enjoined. The plaintiffs sought in the alternative a decree that the contract was subject to rescission.

Issues were made and trial was had. The trial court found generally against the plaintiffs and dismissed their petition. Plaintiffs appeal.

We reverse the judgment of the trial court and remand the cause with directions to enter a judgment declaring the purported contract void and granting the plaintiffs injunctive relief.

The ultimate question to be decided here is whether

or not the contract between Norris and Beatrice is valid.

At the outset we are met with a debate in the briefs as to whether or not the plaintiffs have legal capacity to maintain this action and present that issue. It does not appear that the question was presented to the trial court. If so presented it was determined against Beatrice and Norris. There is no cross-appeal. We accordingly go to the question of whether or not the contract is ultra vires as to Norris and void.

Beatrice owns and operates the only electric distribution system in the city and sells electricity to its residents. It purchases electricity so sold. It has a contract to purchase part of its needs from the United States Bureau of Reclamation. It has been purchasing the remainder of its needs from Consumers under a contract which expired during the course of this litigation.

Beatrice entered into a contract with Norris for the purchase at wholesale of all electric current needed over and above that received from the United States Bureau of Reclamation. The electricity to be so purchased from Norris comprises about 60 percent of Norris' sale of power. Beatrice spent substantial sums of money in preparation of lines and facilities to receive the electricity.

Norris was organized under the provisions of Chapter 86, Laws 1933, page 337, which as amended is now Chapter 70, article 6, R. R. S. 1943. The title of the act recited, among other things, that it was an act "to define the powers, functions, duties and responsibilities" of the districts whose creation it authorized. The initial step toward the organization was the filing of a petition. Laws 1933, c. 86, § 3(2), p. 341, now § 70-603, R. R. S. 1943.

Norris petitioned for the formation of a district in 1935. At that time the act provided that the petition must contain: "The name of the proposed district, which name shall contain if the district is to engage in

the electric light and power business the words 'Public Power District'. * * * A general description of the nature, location and method of operation of the proposed power plants and systems * * *." Laws 1933, c. 86, § 3(2) (a), (c), p. 342. As amended see § 70-604, R. R. S. 1943.

Norris' petition proposed the name of "Norris *Rural* Public Power District." The petition recited in part: "That a general description of the nature, location, and method of operation of the proposed *rural* public electric light and power system is as follows:

"The general purpose and object of the creation of said district is to establish and operate a *rural* electric light and power system to furnish electric light and power at low rates to the *rural* inhabitants of said district and adjoining territory. In connection therewith the district is authorized and shall have power:

"First, to construct or purchase, and operate, transmission lines, substations, and service connections, to supply where economically feasible, electric light and power to the *rural* inhabitants within said district and adjoining territory desiring such service." (Emphasis of "rural" supplied.)

As authorized by Laws 1933, § 3(2), p. 343 (now § 70-607, R. R. S. 1943), the petition was approved on July 15, 1935. This petition, when approved, became the charter of the district. Custer Public Power Dist. v. Loup River Public Power Dist., 162 Neb. 300, 75 N. W. 2d 619.

The repeated use of the word rural throughout the petition as above quoted indicates a clear intent of the petitioners to limit the powers of Norris to the establishing and operation of a rural system and to supply electricity to rural inhabitants. It cannot be successfully contended that a sale of 60 percent of its electricity to a municipality is a rural operation and sale to a rural inhabitant.

As originally enacted, Laws 1933, c. 86, § 6, p. 346,

provided: "A public power district or a public power and irrigation district, organized under the provisions of this act shall have the following powers and shall be entitled to own, have, or exercise the following rights, privileges and franchises: * * *."

By amendment in 1937 the Legislature added the language "subject to the limitations, if any, of the petition for its creation and all amendments thereto: * * *." Laws 1937, c. 152, § 5, p. 583.

This clearly appears as a legislative intent to recognize and affirmatively declare that districts organized under the act were subject to the limitations, if any, of their petition which becomes their charter. The legislative intent to subject districts organized under the act to the language of their petitions is further evidenced by the fact that the limiting clause refers to "all amendments." The 1937 Legislature in the same act authorized amendments to the petition in certain particulars, subject to the approval of the Department of Roads and Irrigation. Laws 1937, c. 152, § 4, p. 581, § 9, p. 589. As amended, see §§ 70-612 and 70-662, R. R. S. 1943.

The 1933 act became Chapter 70, article 7, C. S. Supp., 1933. As above amended in 1937, section 6 thereof became § 70-706, C. S. Supp., 1941. In 1943 the Legislature amended section 70-706, C. S. Supp., 1941, by inserting therein, following the above limitations clause, this language in subdivision (2) thereof: "Any district organized under this act which is engaged in the generation and transmission of electrical energy shall be required to sell electrical energy at wholesale directly to any municipality or political subdivision in the state which is engaged in the distribution and sale of electrical energy when such municipality or political subdivision makes application for the purchase of electrical energy, provided such district has the requested amount of electrical energy available for sale and the municipality or political subdivision agrees to make or pay for the necessary physical connection with the electrical

facilities of such district." Laws 1943, c. 146, § 3, p. 522.

The defendants assert here that this language required Norris to enter into the contract with Beatrice. To reach the answer for that contention we must recite further legislative history.

The Legislature in 1941 created a statute revision commission and prescribed its duties. The commission made its report to the 1943 Legislature. It subdivided section 70-706, C. S. Supp., 1941, into several sections.

Subdivision (1) became section 70-625, R. S. 1943, subdivision (2) became section 70-626, R. S. 1943, and subdivision (3) became section 70-627, R. S. 1943. In the revision commission report all three sections carried the clause "subject to the limitations of the petition for its creation and all amendments thereto." The report of the revision commission to the Legislature showed those provisions. That report was approved and adopted by the 1943 Legislature. Laws 1943, c. 115, § 1, p. 401; § 49-601, R. R. S. 1943.

At the same time and in the same act the Legislature provided that "Except as modified by legislative acts" enacted by the 1943 Legislature, the report of the commission was to take effect when published and when deposited in the office of the Secretary of State. See § 49-603, R. R. S. 1943. Thereafter the Legislature amended section 70-706, C. S. Supp., 1941, as above set out prior to the time the statute commission report was published as a part of the Revised Statutes of Nebraska, 1943.

The 1943 Legislature further directed: "In incorporating the acts of this session of the Legislature, the commission shall compile the same in the proper chapter and thereunder into new or presently designated articles as, in the judgment of the commission, will best facilitate reference thereto *but does not change, modify or alter the law.* In incorporating acts or sections of the present Legislature which are amendatory of past enactments that were divided by the commission in the revision of previous laws, the commission is empowered

and directed to divide the new acts or sections in the same manner and to insert the parts of the new or amendatory acts where a change is made in the law." (Emphasis supplied.) Laws 1943, c. 115, § 10, p. 403. See, also, § 49-610, R. R. S. 1943.

Pursuant to that direction the revision commission inserted the 1943 amendment upon which defendants rely in the statute and it became section 70-626.01, R. S. 1943, and is now section 70-626.01, R. R. S. 1943.

It necessarily follows that section 70-626.01, R. R. S. 1943, does not rest for its validity on the adoption of the report of the revision commission. It rests for its validity on the enactment of Laws 1943, c. 146, § 3(2), p. 522. It is patent also that the requirements of section 70-626.01, R. R. S. 1943, are subject to the limitation of the petition for the creation of Norris. To hold otherwise would be contrary to the act of the 1943 Legislature placing the amendment in a section clearly subject to the limitation; and likewise contrary to the approval of the extension of that limitation by the statute revision commission to all three sections—70-625, 70-626, and 70-627, R. R. S. 1943.

We find no merit in defendants' contention in that regard.

Defendants contend that section 70-628, R. R. S. 1943, and sections 70-501 and 70-502, R. R. S. 1943, authorize the contract between Norris and Beatrice.

What is now section 70-628, R. R. S. 1943, was originally Chapter 86, section 6(4), page 348, of the 1933 act. It remained in the statutes as section 70-706(4), C. S. Supp., 1937; Laws 1937, c. 152, § 5, p. 583. It was section 70-706(4), C. S. Supp., 1941, when the revision commission separated that section into sections 70-625 to 70-628, R. S. 1943. The revision commission did not include the limiting clause in the report as to section 70-628, R. S. 1943. It is now section 70-628, R. R. S. 1943, and provides: "In addition to the rights and powers enumerated in sections 70-601 to 70-679, and in no man-

ner limiting or restricting the same, such district shall be deemed to be and shall have and exercise each and all of the rights and powers of a 'public electric light and power district' or 'public power district' within the meaning of sections 70-501 to 70-503." Clearly the reference to "rights and powers" in the act must refer to "rights and powers" acquired by a district when organized under the act.

Defendants here quote several provisions from sections 70-501 and 70-502, R. R. S. 1943, which they contend authorize the contract between Norris and Beatrice, regardless of the language of its petition for creation. The above sections are the first two sections of Initiated Law No. 324, Laws 1931, c. 116, p. 336.

We had a like contention advanced as to these provisions in Interstate Power Co. v. City of Ainsworth, 125 Neb. 419, 250 N. W. 649. What was said there is peculiarly appropriate here: "There are expressions and language used in the body of the act which would seem to sustain the contention of defendants, but the scope of the act must be determined from its title. It is a familiar rule that a legislative act is limited in its scope and operation by its title, and a like rule is applicable to a law adopted by the initiative method. A careful examination of the title to the act, which is quite lengthy, clearly discloses that it applies only to such cities or villages as are engaged in the generation, transmission or distribution of electrical energy, and provides that such cities may extend, improve and add to their plants and pay the cost of such extensions, additions or improvements by pledging the future earnings of such plants." The decision has been accepted as the settled construction of the act.

We amplify somewhat the analysis of the title of the act. It relates to cities, villages, and public electric light and power districts "engaged" in enumerated activities. It then recites that it is an act to provide for the "extension" of facilities and service outside the

boundaries of the district; to provide for the "interconnection" of facilities; to authorize the pledging of earnings; to make requirements and restrictions on the sale of plants to private persons; to define certain crimes; and to make applicable to the cities, villages, and public power districts affected provisions of law as to eminent domain, etc.

It becomes patent from an analysis of the title that the "rights and powers" granted by section 70-628, R. R. S. 1943, through reference to sections 70-501 and 70-502, R. R. S. 1943, relate to means by which a district may exercise the powers defined in its charter. They do not relate to an increase or extension of those basic defined powers. The Legislature was not revising and amending petition and charter powers.

We find that the above contention of defendants is without merit.

Finally, it is contended that the petition for its creation does not limit Norris from selling electricity to Beatrice at wholesale, and that accordingly it has the power. This in effect is an appeal to the doctrine of implied powers.

Norris quotes and relies on the following rule taken from Drainage Dist. No. 2 v. Dawson County Irr. Co., 140 Neb. 866, 2 N. W. 2d 321: Whatever transactions are fairly incidental or auxiliary to the main business of the corporation and necessary or expedient in the protection, care, and management of its property, may be undertaken by the corporation and be within the scope of its corporate powers.

We need point out only that there appears no basis for holding that the contract here involved is fairly incidental or auxiliary to the main business of Norris.

In State ex rel. Johnson v. Consumers Public Power Dist., 143 Neb. 753, 10 N. W. 2d 784, 152 A. L. R. 480, we held: " 'It seems clear that an express proviso that a corporation shall not do certain acts is no stronger than the failure to give authority, express or implied,

to do them, for powers not granted either expressly or impliedly, are impliedly prohibited.' "

We see no merit to the above contention.

We hold the purported contract to be ultra vires as to Norris and is null and void.

The judgment of the trial court is reversed and the cause remanded with directions to enter a judgment declaring the purported contract to be null and void and granting the plaintiffs appropriate injunctive relief.

REVERSED AND REMANDED WITH DIRECTIONS.