CITY OF MILFORD, NEBRASKA, A MUNICIPAL CORPORATION, APPELLANT, v. EDWARD SCHMIDT, APPELLEE.

120 N. W. 2d 262

Filed March 8, 1963. No. 35353.

Ivan A. Blevens, for appellant.

John McArthur, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is an action by the city of Milford to enjoin Edward Schmidt, hereinafter referred to as Schmidt, from maintaining a house trailer on property owned by him in said city. The trial court denied the injunction and the city of Milford perfected its appeal to this court.

Milford is a city of the second class, with a popula-

tion of 1,480. Hereafter, for convenience, it will be referred to as city. It is the home of the Nebraska Trade School, which is located on a 10-acre tract across the road from the Schmidt property. Schmidt's property, which has been devoted to business or commercial use for several years, is located on the south side of U. S. Highway No. 6 which runs along the eastern and southern edge of the city. The city has two trailer courts. One is on the eastern edge across the highway and approximately 200 feet from the Schmidt property. The other is on the western edge of the city. Schmidt lives in and maintains his trailer next to and west of his place of business, which is a restaurant building in two sections. One of these sections is operated as a restaurant and the other as a soft ice cream facility.

The city's petition alleges that under its general statutory police powers it had enacted certain ordinances for the protection of the public health, safety, and welfare. It then sets out section 10-105 of the Revised Municipal Code of Milford, Nebraska, 1953, which is as follows: "Permits must be secured from the Board of Trustees of Milford, for the locating of Trailer Houses in said Village, if they are to remain in said Village for a period of time exceeding 30 days."

It then sets out the provisions of Article 1, chapter 5, of the Code, which defines "nuisances" generally and specifically and authorizes their abatement by injunction. The only provision of Article 1 which could be even remotely pertinent to this action is the following: "(5) The erection or maintenance of any building or structure in such a manner as to be unsafe, injurious or annoying to the public health or safety or so unsightly as to depreciate the value of property in the vicinity thereof."

The petition then alleges that ordinance No. 297, which is attached to the petition, was duly passed and adopted by the city on September 28, 1961. Ordinance No. 297 is a very comprehensive ordinance for the licens-

ing of trailer courts within the city. The title of ordinance No. 297 is as follows: "An ordinance defining and regulating trailer courts in the city of Milford, and within an area of one-half mile from the corporate limits of said city, establishing minimum standards governing the construction and maintenance of trailer courts; establishing minimum standards governing the provided utilities and facilities, and other physical things and conditions to make trailer courts safe, sanitary and fit for human habitation; fixing the responsibilities and duties of owners and operators of trailer courts; authorizing the inspection of trailer courts; to prohibit the placing, keeping, or maintaining of a trailer coach within said city, or within an area of one-half mile from the corporate limits of said city, at a location other than a duly licensed trailer court; and to regulate an area within one-half mile of the corporate limits of said city under the provisions of section 17-1001, Revised Statutes of Nebraska, 1943, Supplement of 1958; and fixing penalties for violation."

Sections II and III, of ordinance No. 297, are applicable to and are the only provisions applicable to a single trailer coach. They are as follows: "SECTION II. REGULATION. It shall be unlawful for any person to place, keep, maintain, or to permit the placing, keeping, or maintenance of a trailer coach used for human habitation, either temporary or permanent, on any street, alley, drive, plot or lot, within the City of Milford for more than twenty-four hours at any location other than within a duly licensed trailer court. The removal of wheels, or the placement of a trailer coach on a permanent foundation shall not constitute an exception to this section.

"SECTION III. REGULATION. It shall be unlawful for any person to place, keep, maintain, or to permit the placing, keeping, or maintenance of a trailer coach at any place within an area of one-half mile from the corporate limits of the City of Milford, which said area

is hereby so regulated under the provisions of Section 17-1001, Revised Statutes of Nebraska, 1943, Supplement of 1958, except within a duly licensed trailer court. The removal of wheels, or the placement of a trailer on a permanent foundation shall not constitute an exception to this section."

The petition alleges that prior to the placement of the trailer within the city, Schmidt requested a permit to maintain the trailer coach within the city but that the request was denied by the mayor and council of the city. It alleges that in violation of the above ordinances, Schmidt is maintaining the trailer coach on private property within the city. It further alleges that the trailer constitutes a structure annoying to public health and safety and is so unsightly as to depreciate the value of the property in the vicinity and constitutes a nuisance. Digressing for a moment, on the allegation of being unsightly, the testimony of the witnesses for the city is that Schmidt's trailer is a "good looking trailer," and would be readily admitted in the existing trailer courts.

Schmidt's answer in substance alleges his ownership of the property on which the trailer is maintained, the establishment of facilities for a mobile home prior to the enactment of the ordinances mentioned in the city's petition, and that the ordinances are unconstitutional and void as to him.

The mayor, the chief witness for the city, testified that when Schmidt first talked to him there was an ordinance which permitted the issuance of a permit, but that the city was not issuing them. He testified further that it is the city's position that under no circumstances will it permit Schmidt to live in a trailer house on his own land. The reason given by the mayor for the city's position is that a trailer depreciates the value of other property surrounding it, and if the city permitted Schmidt to have a trailer coach on his property, anyone else in town could do the same thing.

Ordinance No. 297 was adopted at a special meeting

called for that purpose on September 28, 1961. The ordinance provided that it should be in effect from and after the 28th day of September 1961. There was no publication of the ordinance until October 11, 1961, when it was published in the Milford Times, a legal newspaper. Section 17-613, R. R. S. 1943, provides in part: "All ordinances of a general nature shall, *before they take effect,* be published, within one month after they are passed, * * *." (Italics supplied.) In certain limited emergencies, none of which is applicable herein, ordinances may become effective upon proclamation of the mayor.

There is no dispute in the record that the utility connections being used by the trailer are not code installations, because the city refuses to approve or authorize such connections. The connections being presently used are attached to the utility facilities serving the business located on the premises. The evidence is also undisputed that Schmidt is willing and anxious to comply with the code regulations covering the utility connections if the city will issue him a permit for the trailer at its present location and will permit proper code installations.

The trial court found generally for Schmidt. The ordinances were held not to be unconstitutional, but as construed not to effect Schmidt if he complies with the ordinances requiring proper sewer, water, and electricity connections.

The city appeals, alleging three assignments of error: (1) The court erred in finding that ordinance No. 297 could not be construed to prohibit the defendant from maintaining a trailer coach on his own land; (2) the court erred in finding defendant could maintain said trailer coach without a permit from the city; and (3) the court erred in finding the act of the defendant in maintaining his trailer coach did not constitute a nuisance. We will consider these assignments in inverse order.

Schmidt's trailer coach is described by the city's witnesses as a "good looking trailer." It is located on a highway in an area which has been and is devoted to commercial pursuits and is within 200 feet of an existing trailer court. The record is very meager on this point but it is fairly evident that the trailer is entirely compatible with the area. The code does not define the maintenance of a trailer as a nuisance, and, if it did, the mere definition would not make it so unless it was a nuisance in fact. The only power which a city has to declare the maintenance of a trailer coach a nuisance is to find that it violates the interests of peace, public health, public morality, public safety, or the general welfare of the city. See, Jewel Tea Co. v. City of Geneva, 137 Neb. 768, 291 N. W. 664; Clough v. North Central Gas Co., 150 Neb. 418, 34 N. W. 2d 862.

It is difficult to understand how an acceptable trailer house, within 200 feet of a trailer court, in a commercial area and located on the owner's property, without further showing can be said to be a nuisance per se. The utility installations are not in compliance with the code, but that deficiency is the result of the city's attitude and its refusal to permit city employees to authorize the installations, and has been covered by the trial court's judgment. There is not sufficient evidence in this record to sustain a finding that the maintenance of the trailer coach where located is a nuisance.

As to the second assignment, it is true that Schmidt has never obtained a permit for the location of his trailer coach. He did, however, attempt to comply with the ordinance. The city's petition affirmatively states that a permit was denied by the mayor and council of the city. This request was made before ordinance No. 297 was operative and at a time when the municipal code provided for such permits. The judgment of the trial court essentially determined that Schmidt's application was timely made and the refusal to issue a permit was an abuse of discretion or an arbitrary action on the part

of the city council. We see no reason to disturb that finding.

The reason given for the action of the mayor and council was that they did not want trailers in Milford except in trailer courts. In this regard, we might observe that the exercise of the police power delegated to municipal corporations cannot be invoked on purely esthetic grounds. City of Scottsbluff v. Winters Creek Canal Co., 155 Neb. 723, 53 N. W. 2d 543. A code provision requiring a permit does not clothe the issuing body with an arbitrary power to refuse to issue permits. The action of the mayor and council of the city is susceptible of no other inference but that they assumed they possessed such power. As we said in State ex rel. McMonies v. McMonies, 75 Neb. 443, 106 N. W. 454, authority to regulate does not give power to suppress.

The city argues that ordinance No. 297 is not intended as a zoning ordinance but as an exercise of the police power to protect the health, safety, and morals of the community. The ordinance purports to be an exercise of the zoning power and not an exercise of the police power. Its legality as a zoning ordinance need not be decided here since it as such could have no retroactive effect on Schmidt. It could not become operative before October 11, 1961. Schmidt had attempted to get a permit and his trailer was located on his premises by at least September 29, 1961. The ordinance cannot be construed to operate retroactively to divest Schmidt of his interests under the previous code provision.

Schmidt contends ordinance No. 297 is strictly a zoning ordinance and is an unreasonable exercise of the zoning power. It is not necessary to determine the validity of ordinance No. 297 as a zoning regulation in view of our holding that it is not applicable to Schmidt. However, unless there are some provisions which are not a part of this record, we do note that the city does not appear to have any comprehensive zoning plan. Sec-

tion 19-903, R. R. S. 1943, referring to zoning regulations, provides: "Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic, and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements. Such regulations shall be made with reasonable consideration, among other things, of the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality."

We said in Weber v. City of Grand Island, 165 Neb. 827, 87 N. W. 2d 575: "Generally, the test of validity of zoning action or a zoning ordinance is whether or not such action or ordinance is in accord with a comprehensive plan of zoning as required by enabling statutes, and whether or not it is lawfully designed to promote the general welfare or other objectives specified in the enabling statutes, rather than merely to benefit individual property owners or to relieve them from the harshness of the general regulation as applied to their property."

The municipal code, exhibit No. 2, contains some zoning regulations dividing the city into three districts: Business districts, railroad districts, and residence districts. The business districts are defined as the area where business houses are located as of December 8, 1953. At that time, there was a filling station on what is now Schmidt's property. This was destroyed by a subsequent tornado and was rebuilt as a restaurant by one of Schmidt's predecessors in interest. The residence districts are defined to include all of the village except those portions included in the business and railroad dis-

tricts. No attempt is made in the code to define in any manner what activities may be carried on in the business districts, and no standards are provided for the definition of business. Ordinance No. 297 seeks to force all trailer houses into licensed trailer courts, but does not restrict trailer courts to any particular part of the city or set up standards as to their locations, nor does it prevent their location in any of the three districts. As we view the code and ordinance No. 297, we do not believe that they constitute the comprehensive zoning plan contemplated by section 19-903, R. R. S. 1943.

A city of the second class has no power except that conferred by statute. As we said in Dell v. City of Lincoln, 170 Neb. 176, 102 N. W. 2d 62: "A municipal corporation is a creature of the law established for special purposes, and its corporate acts must be authorized by its charter and other acts applicable thereto. It therefore possesses no power or faculties not conferred upon it, either expressly or by fair implication, by the laws which created it or by other laws, constitutional or statutory, applicable to it."

Finding no merit in the assignments of error, we determine that the judgment of the trial court is correct and should be affirmed.

AFFIRMED.