CITY OF O'NEILL, NEBRASKA, A MUNICIPAL CORPORATION, ET AL., APPELLANTS, V. CONSUMERS PUBLIC POWER DISTRICT, A PUBLIC CORPORATION AND POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, ET AL., APPELLEES, LOUP RIVER PUBLIC POWER DISTRICT, A PUBLIC CORPORATION, INTERVENER-APPELLANT.

143 N. W. 2d 741

Filed July 1, 1966. No. 36090.

Norman Gonderinger, for appellants.

Wilson, Barlow, Neff & Watson, Julius D. Cronin, and Robert G. Simmons, for appellees.

Schmid, Ford, Snow, Green & Mooney and Lyle Winkle, for intervener-appellant.

Crosby, Pansing, Guenzel & Binning, for amicus curiae.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

McCOWN, J.

The original opinion in this cause is found at 179 Neb. 773, 140 N. W. 2d 644. Motion for rehearing was granted. After reargument and upon reconsideration, the court adheres to its original opinion.

ORIGINAL OPINION ADHERED TO.

WHITE, C. J., CARTER and SPENCER, JJ., dissenting.

We respectfully dissent from adherence to the former opinion herein. We are now convinced that our former opinion was wrong and should be withdrawn. The contract in question is unauthorized or ultra vires as to the City of O'Neill, and consequently is null and void.

A city has only such powers as are granted by statute. A recent restatement of the rule is appropriate here. In City of Milford v. Schmidt, 175 Neb. 12, 120 N. W. 2d 262, we said: "A city of the second class has no power except that conferred by statute. As we said in Dell v. City of Lincoln, 170 Neb. 176, 102 N. W. 2d 62: 'A municipal corporation is a creature of the law established for special purposes, and its corporate acts must be authorized by its charter and other acts applicable thereto. It therefore possesses no power or faculties not conferred upon it, either expressly or by fair implication, by the laws which created it or by other laws, constitutional or statutory, applicable to it.' "

It cannot be questioned that a muncipality, such as O'Neill, is a creature of the Legislature, derives its powers and authority solely from the state, and can only exercise the powers expressly granted to it, together with those necessarily incidental thereto. A statute granting powers to a municipality must be strictly construed and, in case of doubt, such doubt must be resolved against the grant of the power. Nelson-

Johnston & Doudna v. Metropolitan Utilities Dist., 137 Neb. 871, 291 N. W. 558; 37 Am. Jur., Municipal Corporations, § 113, p. 725.

We cannot agree with the superficial way the opinion construes sections 70-501 and 70-502, R. R. S. 1943, and overrules Interstate Power Co. v. City of Ainsworth, 125 Neb. 419, 250 N. W. 649, so far as it is in conflict with the opinion.

Section 70-501, R. R. S. 1943, provides in part as follows: "Any city, * * * which may own or operate, or hereafter acquire or establish, any * * * plant, distribution system and transmission lines *may, at the time of or at any time after such acquisition or establishment,* extend the same beyond its boundaries, and for that purpose is authorized * * * to * * * acquire, * * * plants, distribution systems and transmission lines, outside of the boundaries of such city, * * *." (Italics supplied.)

Section 70-502, R. R. S. 1943, so far as pertinent here, provides: "For the purpose of * * * purchasing electrical energy * * * any city, * * * is * * * authorized to enter into agreements to connect and interconnect its * * * distribution system and transmission lines with the * * * system or transmission lines of any * * * public power districts."

Sections 70-501 and 70-502, R. R. S. 1943, were adopted in 1930 as Initiated Law No. 324. Laws 1931, c. 116, p. 336. We go to the title of the act to determine its scope and operation. In Schroll v. City of Beatrice, 169 Neb. 162, 98 N. W. 2d 790, in construing these statutes, we said: "It is a familiar rule that a legislative act is limited in its scope and operation by its title, and a like rule is applicable to a law adopted by the initiative method."

We quote the title to the act as far as pertinent here: "An Act relating to *cities,* villages, and public electric light and power districts *engaged in the generation, transmission, distribution, purchase and/or sale of electrical*

*energy* for lighting, heating and power purposes; *to provide for the extension, by any city, village,* or public electric light and power district of its electric light and power plants, *transmission lines and service outside of the boundaries of such municipality or district; to provide for interconnection of electric light and power plants, lines, systems and service* by and *between cities,* villages and public electric light and power districts in this state * * *." (Italics supplied.)

Section 70-501, R. R. S. 1943, specifically provides: "* * * at the time of or at any time after such acquisition or establishment."

In Schroll v. City of Beatrice, *supra,* the contention was made that section 70-502, R. R. S. 1943, gave unlimited authority for any type of contract or purchase of electricity by the city. Beatrice did not own or operate any electrical generating plant and was not engaged in the electrical business in any way. Our court adhered to its previous holding in Interstate Power Co. v. City of Ainsworth, 125 Neb. 419, 250 N. W. 649, and said as follows: "Defendants here quote several provisions from sections 70-501 and 70-502, R. R. S. 1943, which they contend authorize the contract between Norris and Beatrice, regardless of the language of its petition for creation. The above sections are the first two sections of Initiated Law No. 324, Laws 1931, c. 116, p. 336. * * * We had a like contention advanced as to these provisions in Interstate Power Co. v. City of Ainsworth, 125 Neb. 419, 250 N. W. 649. What was said there is peculiarly appropriate here: 'There are expressions and language used in the body of the act which would seem to sustain the contention of defendants, but the scope of the act must be determined from its title. It is a familiar rule that a legislative act is limited in its scope and operation by its title, and a like rule is applicable to a law adopted by the initiative method. A careful examination of the title to the act, which is quite lengthy, *clearly discloses that*

*it applies only to such cities or villages as are engaged in the generation, transmission or distribution of electrical energy,* and provides that such cities may extend, improve and add to their plants and pay the cost of such extensions, additions or improvements by pledging the future earnings of such plants.' *The decision has been accepted as the settled construction of the act.* * * * We amplify somewhat the analysis of the title of the act. *It relates to cities, villages, and public electric light and power districts 'engaged' in enumerated activities. It then recites that it is an act to provide for the 'extension' of facilities* and service outside the boundaries of the district; to provide for the 'interconnection' of facilities; * * *." (Italics supplied.)

In construing these sections of the act in Interstate Power Co. v. City of Ainsworth, *supra,* we further specificially held: "*Clearly, the act does not apply to a city which does not own any electric light or power plant or distribution system. Neither express nor implied power is conferred by chapter 116 to acquire an electric light and power plant* and pay for it by pledge of future earnings." (Italics supplied.)

The City of O'Neill does not own or operate any electric light or power plant or distribution system; nor is the agreement connected with an extension of facilities outside of the city limits of O'Neill; nor is the agreement concerned with an "interconnection" agreement by which there would be an exchange of power between O'Neill and Consumers. We adhere to the construction placed on these acts in Schroll v. City of Beatrice, *supra,* and Interstate Power Co. v. City of Ainsworth, *supra.* They appear to be the settled construction of these two statutes, sections 70-501 and 70-502, R. R. S. 1943, and we see no reason to depart from these holdings.

Consequently, we insist that neither of these statutes grant any power to O'Neill to enter into a wholesale power contract for the supplying of electricity to a distribution system which it does not own at the time the

contract was entered into, March 17, 1964. To read a prospective intention into the act is contrary to our opinions, which constitute the settled construction of the act, and is a rewriting of the act. It is our duty, in the construction of a statute, to give effect to all of its several parts. No sentence, clause, or word should be rejected as meaningless or superfluous, if it can be avoided and the plain, ordinary meaning of the language should be taken into account in order to determine the legislative will. Rose v. Hooper, 175 Neb. 645, 122 N. W. 2d 753; Pierce Co. v. Century Indemnity Co., 136 Neb. 78, 285 N. W. 91.

Section 17-528, R. R. S. 1943, provides that a city of the second class, such as O'Neill, may make a contract not to exceed 5 years, "for the furnishing of light for the streets, lanes, alleys and other public places and property of said city or village, and the inhabitants thereof."

The contract here involved is a 25-year wholesale power contract coupled with a retail section that has no termination date. By its terms the statute limits the power of the city to make such a contract to 5 years. The retail portion of the agreement which covers the parties' total relationship, before the acquisition of the electric system by O'Neill, implicitly gives Consumers the right to furnish light for the streets, public places, and inhabitants thereof. The furnishing of electricity by Consumers under the retail portion of the agreement will require that Consumers use the public ways, streets, and alleys for the maintenance and operation of the distribution system. The opinion holds that the power contract does not apply to the furnishing of light for the streets, lanes, and alleys and other public places and property of the city and the inhabitants thereof. We were in error in so holding because, as stated above, it is implicit in the contract that Consumers is granted the right to use the streets, alleys, and public ways in conformity with the statutory language. Consequently, we believe that sections 17-528 and 17-528.03, R. R. S. 1943,

apply and limit O'Neill's power to make such a contract to 5 years.

Our opinion holds that sections 17-528 and 17-528.03, R. R. S. 1943, do not apply to the contract for the reason that both of these sections are general sections dealing with franchises and the agreement herein is not a franchise. We point out that since sections 70-501 and 70-502, R. R. S. 1943, confer no power to O'Neill to enter into this contract, it is really unnecessary to consider the effect of sections 17-528 and 17-528.03, R. R. S. 1943. However, we do not agree with the accuracy of the bland statement in the opinion. The first portion deals with the retail operation, and exhibit A, the wholesale power contract, we would deem to be the second part. The wholesale power portion becomes operative when and after the City of O'Neill elects, after January 1, 1972, to acquire the distribution system.

The retail portion, or the first part of the agreement, provides for the payment of 2 percent of the gross retail revenues until December 31, 1971, and, ignoring the question of public policy, it is certainly the inducement for signing the contract. It also provides for the payment of at least 7 percent of the retail revenues after December 31, 1971, so long as Consumers operates the distribution system. While it is true that the City of O'Neill does not in the agreement provide that Consumers is to carry on the retail operation after January 1, 1972, until such time as the city exercises it option to take over the distribution system, and it has to take. affirmative action to do so which it may never do, Consumers continues to operate the retail system and will pay at least 7 percent of the gross to the city. We have difficulty in understanding why this should not be interpreted as a franchise agreement within the purview of section 17-528, R. R. S. 1943.

We also call attention to the provisions of section 17-903, R. R. S. 1943, which, so far as material herein, provides: "Before any city of the second class or village

shall make any contract with any person or corporation within or without such city or village for the furnishing of electricity, power, steam or other product to such city or village, or any such municipal plant within such city or village, the question shall be submitted to the electors voting at any regular or special election upon the proposition; * * *." This statute, read in conjunction with sections 17-901 and 17-902, R. R. S. 1943, would require that the contract in question would need to be submitted to the election process before it could be executed.

In summary, neither sections 70-501 nor 70-502, R. R. S. 1943, grant the City of O'Neill the necessary power to enter into a power contract and agreement such as is at issue here; nor does any power to enter into a contract for a period of 25 years flow from the application of sections 17-528 or 17-528.03, R. R. S. 1943. Such power does not exist unless conferred by statute and a city has no inherent powers or authority outside the statutes. No statutory authority or power has been called to our attention that would authorize the contracts in issue here. We find ourselves in the same position as the court in Schroll v. City of Beatrice, *supra*. There the court said: "In State ex rel. Johnson v. Consumers Public Power Dist., 143 Neb. 753, 10 N. W. 2d 784, 152 A. L. R. 480, we held: 'It seems clear that an express proviso that a corporation shall not do certain acts is no stronger than the failure to give authority, express or implied, to do them, for powers not granted either expressly or impliedly, are impliedly prohibited.' "