WHITEHEAD OIL COMPANY, A CORPORATION, AND MILTON E. WHITEHEAD, APPELLANTS, V. CITY OF LINCOLN, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE.

451 N.W.2d 702

Filed February 23, 1990.   No. 88-390.

William G. Blake, of Pierson, Fitchett, Hunzeker, Blake & Loftis, for appellants.

William F. Austin, Lincoln City Attorney, for appellee.

HASTINGS, C.J., BOSLAUGH, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

Plaintiffs-appellants, Whitehead Oil Company and its major stockholder, Milton E. Whitehead, raising no constitutional issues, assign error to the factual and legal analyses embodied in the district court's sustainment of defendant-appellee City of Lincoln's motion for summary judgment in this action which challenges Lincoln's denial of plaintiffs' request for the land-use permit described hereinafter. We affirm as to Milton E. Whitehead and reverse and remand for further proceedings as to Whitehead Oil.

At the time Whitehead Oil purchased the subject property, it was located in a G-1 planned commercial district. In 1979, the property was rezoned and placed in a B-2 planned neighborhood business district. Such a district permits, once Lincoln issues a land-use permit, the construction and operation of retail stores, automobile wash facilities, and service stations. Lincoln Mun. Code §§ 27.31.030 and 27.31.040 (1984).

On October 27, 1986, plaintiffs applied for a land-use permit which would allow development of the property for use as a convenience retail store, for the sale of gasoline, and for a carwash.

The Lincoln planning director recommended to the planning commission and council that the permit be denied for the reasons that the proposed use involved the improper placement of gasoline pumps and a canopy in "part of the required front yard" and the improper placement of driveways immediately adjacent to residential uses. Thereafter, plaintiffs modified the use proposal in accordance with recommendations and

comments made by the planning director, including the elimination of the proposed carwash. The planning director then recommended approval of the proposed use.

Meanwhile, in January 1987, a representative of the local neighborhood association filed an application to rezone the subject and certain other property in the vicinity, from within the B-2 district to within an O-3 office park zoning district. The neighborhood representative's change of zone application specifically notes that it was submitted "in order that no retail activity (including convenience stores) be allowed, only office space use." Neither service stations nor retail convenience stores are permitted in O-3 zoning districts. Lincoln Mun. Code §§ 27.27.020 and 27.27.030 (1985).

On January 28, 1987, the planning commission voted to delay action on plaintiffs' application for a land-use permit pending review of the neighborhood representative's request for a rezoning of the property. Lincoln concedes that the delay was "for the purpose of preventing the [plaintiffs'] use permit from being issued before action could be taken on the [neighborhood representative's] requested change of zone."

Plaintiffs protested the planning commission's delay of action on their permit application to the council, and the council, pursuant to plaintiffs' request, ordered the planning commission to forward its recommendation concerning plaintiffs' permit application. On February 18, 1987, the commission recommended approval of the plaintiffs' application.

At this point, the planning director and council delayed hearing on the planning commission's recommendation in order "to allow the change of zone [requested by the neighborhood representative] to proceed through the Planning Commission." Plaintiffs deny Lincoln's claim that after April 6, 1987, any "delay in further consideration of and action upon Plaintiffs' use permit application occurred with the affirmative concurrence of Plaintiffs' representative in such delay."

On June 1, 1987, the council adopted an ordinance rezoning the district in which the subject property is contained, as requested by the neighborhood representative, and then denied plaintiffs' permit application. The property remains vacant.

Milton Whitehead stated by affidavit that prior to June 1, 1986, Whitehead Oil spent approximately $2,000 in the creation of plans for the development of the property in accordance with the permit application, approximately $2,968.01 in the revision of such plans, and approximately $10,200 in attorney and other professional fees and expenses which were directly related to obtaining approval from Lincoln of the land-use permit application. Whitehead further asserted that he remained ready at all times since October 27, 1986, to begin construction immediately upon Lincoln's approval of the application.

We begin our analysis by noting that so far as the record reveals, Whitehead Oil is the sole owner of the property in question. Milton Whitehead's interest in the matter arises solely by virtue of his position as Whitehead Oil's majority stockholder. However, that position does not give him a legal interest in the permit application at issue, and, thus, whatever the situation may be as to Whitehead Oil, the summary judgment as to him is correct and is hereby affirmed.

Whitehead Oil's position is that because it filed its permit application before the change of zone was proposed by the neighborhood representative or adopted by Lincoln, it had acquired a vested right to use the subject property in a manner consistent with the zoning in effect at the time of the filing. Thus, it asserts that the rezoning of the district in which its property is located may not operate retroactively to require the denial of its application.

Whitehead Oil contends that, as have some other states, we adopted such a rule in *City of Milford v. Schmidt*, 175 Neb. 12, 120 N.W.2d 262 (1963). In that case, Schmidt requested a permit from the City of Milford to place a trailer home on property within the city. The city denied Schmidt's request even though at the time there existed an ordinance which permitted issuance of the permit. Schmidt nevertheless placed the trailer home on the property and began using it. The city thereafter enacted an ordinance which precluded Schmidt's use of the property for placement of a trailer home. The city then filed an action to enjoin Schmidt from continuing to maintain the trailer on his property. The trial court entered judgment for Schmidt, and the city appealed, arguing that the lower court

erred in finding Schmidt could maintain the trailer on the property without a permit from the city. We upheld the trial court's implicit determination that Schmidt's application for a permit was timely made, and the refusal to issue a permit was an abuse of discretion or an arbitrary action on the part of the city council. We further held that because the zoning ordinance which prohibited the use of Schmidt's property for placement of a trailer home did not become operative until after Schmidt had attempted to get the permit and had already placed the trailer home on his property, the subsequent zoning ordinance "could have no retroactive effect on Schmidt" to "divest Schmidt of his interests under the previous code provision." *Id.* at 19, 120 N.W.2d at 266.

The decision in *City of Milford* relies on the fact that Schmidt had established a vested interest in an allowed use prior to the adoption of the prohibitory ordinance, and concludes that Schmidt's lack of permit to establish the use should be overlooked because the permit should have been issued anyway; thus, that case is not authority for the rule Whitehead Oil espouses. Indeed, the *Milford* court did not consider whether the new ordinance was pending at the time Schmidt filed his application for the permit or at the time the city denied the application relevant to the holding.

The applicable precedent is found in *City of Omaha v. Glissmann*, 151 Neb. 895, 39 N.W.2d 828 (1949), *appeal dismissed* 339 U.S. 960, 70 S. Ct. 1002, 94 L. Ed. 1370 (1950). Therein, Glissmann filed an application for a permit with the City of Omaha to be allowed to establish a trailer park on property he had leased within the city. Prior to seeking the permit, Glissmann spent several days clearing and grading the property for the purpose of establishing the trailer park. The city granted Glissmann the permit subject to approval by the city's building department. The building department never approved the permit because the city meanwhile granted a petition, filed by residents in the area, to reconsider its decision to grant the permit. Upon reconsideration, the city planning commission submitted to the city council a report which proposed an ordinance which would amend the existing zoning ordinances by rezoning the property into a residence district,

eliminating its use for the purpose of a trailer park. The city passed the ordinance. Nonetheless, Glissmann thereafter proceeded to establish and begin operation of the trailer park on the property. The city brought action against Glissmann to enjoin him from proceeding with the operation of the trailer park. The trial court entered judgment for the city, and Glissmann appealed, claiming that he had established a nonconforming use of the premises as a trailer park prior to the city's amendment of its zoning ordinances and that therefore he had a vested right of which the city could not deprive him.

We acknowledged that a zoning ordinance may not operate retroactively to deprive a property owner of his or her previously vested rights, that is, a use to which his or her property was put before the enactment of the ordinance. However, we also noted that "the purchase or leasing of lands with the intent to use them for a use then permissible under a zoning ordinance does not prevent the city from changing its zoning ordinance applicable thereto as such property is always held subject to the city's lawful exercise of the police power." *Id.* at 902, 39 N.W.2d at 833. We determined that

> a new ordinance operates retroactively to require a denial of an application or to nullify a permit already issued, provided that the holder of the latter has not already engaged in construction or incurred obligations directly in relation thereto, when such application or permit seeks or grants a use no longer permitted under the new ordinance.

*Id.* at 902-03, 39 N.W.2d at 834. We concluded that even assuming Glissmann was authorized to use the property for the operation of a trailer park under the conditional permit granted by the city, he had not established any vested right to use the property for the operation of a trailer park prior to the adoption of the ordinance which eliminated the use of the premises for that purpose.

Thus, a landowner has no vested right in the continuity of zoning in a particular area so as to preclude subsequent amendment, and a zoning regulation may be retroactively applied to deny an application for a building permit even though the permit could lawfully have issued at the time of application. Accord, *Burcam Corp. v. Planning Bd. Tp. of*

*Medford*, 168 N.J. Super. 508, 403 A.2d 921 (1979); *Properties, Inc. v. Board of Adjustment*, 18 N.C. App. 712, 198 S.E.2d 1 (1973); *Rockville Fuel v. Gaithersburg*, 266 Md. 117, 291 A.2d 672 (1972).

Nonetheless, a new zoning ordinance will not have retroactive effect where an applicant has substantially changed position in good-faith reliance upon the existing zoning by causing substantial construction to be made or by incurring substantial expenses related to construction. *City of Omaha v. Glissmann, supra*. See *Omaha Fish & Wildlife v. Community Refuse*, 213 Neb. 234, 329 N.W.2d 335 (1983). See, also, *County of Saunders v. Moore*, 182 Neb. 377, 155 N.W.2d 317 (1967) (the mere issuance of a permit gives no vested rights to the permittee nor does the permittee acquire a property right in the permit absent a showing substantial construction had already been undertaken); *A. C. Nelsen Enterprises, Inc. v. Cook*, 188 Neb. 184, 195 N.W.2d 759 (1972) (holding that where a certificate of occupancy has been properly obtained in accordance with zoning statutes and ordinances, it may not be arbitrarily revoked where the certificate holder has incurred substantial expenses in good-faith reliance upon such certificate). This substantial reliance exception is basically an application of the rule that a zoning ordinance may not, without providing a reasonable plan for discontinuance, operate retroactively to deprive a property owner of previously vested rights by preventing a use to which the property was put before enactment of the prohibitory ordinance. See, *Mossman v. City of Columbus, ante* p. 78, 449 N.W.2d 214 (1989); *City of Lincoln v. Bruce*, 221 Neb. 61, 375 N.W.2d 118 (1985); *Wolf v. City of Omaha*, 177 Neb. 545, 129 N.W.2d 501 (1964); *City of Omaha v. Glissmann*, 151 Neb. 895, 39 N.W.2d 828 (1949), *appeal dismissed* 339 U.S. 960, 70 S. Ct. 1002, 94 L. Ed. 1370 (1950).

However, the expenditures made by Whitehead Oil in preparing to obtain the land-use permit were, as a matter of law, neither so substantial nor of such a nature as to deprive Lincoln of the right to exercise its police power with regard to the property in question. They were made in an effort to obtain a permit which Whitehead Oil knew would not issue unless and

until it submitted plans which met with Lincoln's approval under whatever ordinance controlled the use of the property. Were the situation otherwise, a permit requirement would be useless. See, *Omaha Fish & Wildlife v. Community Refuse, supra*; *County of Saunders v. Moore, supra*.

All the same, a zoning authority may not use its powers to reward its friends or punish its enemies; thus, where a zoning authority is guilty of misconduct or bad faith in its dealings with the applicant for a use permit in accordance with the then existing zoning regulation or arbitrarily and unreasonably adopts a new regulation in order to frustrate the applicant's plans for development rather than to promote the general welfare, the new regulation may not be applied retroactively. *Commercial Prop., Inc. v. Peternel*, 418 Pa. 304, 211 A.2d 514 (1965); *Nott v. Wolff*, 18 Ill. 2d 362, 163 N.E.2d 809 (1960); *Sunset View Cemetery Assn. v. Kraintz*, 196 Cal. App. 2d 115, 16 Cal. Rptr. 317 (1961). See, also, *City of Omaha · v. Glissmann, supra*; *Willingham v. City of Dearborn*, 359 Mich. 7, 101 N.W.2d 294 (1960).

Summary judgment is properly granted when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there exists no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from the material facts and that the moving party is entitled to judgment as a matter of law. *John v. OO (Infinity) S Development Co., ante* p. 190, 450 N.W.2d 199 (1990); *Wicker v. City of Ord*, 233 Neb. 705, 447 N.W.2d 628 (1989).

Whether Lincoln, by delaying action on Whitehead Oil's application until after adopting the neighborhood representative's proposal for a change of zoning, acted arbitrarily and unreasonably or in bad faith in order to prevent Whitehead Oil from acquiring a permit to operate a convenience store on its property or, rather, acted reasonably and in good faith to promote the general welfare is a question of material fact, concerning which there is a genuine issue.

Thus, it cannot be said that Lincoln is entitled to a judgment against Whitehead Oil as a matter of law, and the summary judgment against Whitehead Oil must therefore be reversed and its cause remanded for further proceedings in accordance

with this opinion.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.

WHITE, J., not participating.