A. C. NELSEN ENTERPRISES, INC., A CORPORATION, APPELLANT, v. R. H. DOC COOK ET AL., APPELLEES.

195 N. W. 2d 759

Filed March 17, 1972. No. 38110.

Edward Shafton and Bernard E. Vinardi, for appellant.

Herbert M. Fitle and Allen L. Morrow, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

McCOWN, J.

The district court for Douglas County, Nebraska, dismissed plaintiff's petition and appeal challenging a decision of the Board of Appeals of the City of Omaha which revoked a certificate of occupancy issued to the plaintiff.

On February 4, 1969, the plaintiff, A. C. Nelsen Enterprises, Inc., applied to the City of Omaha for a certificate of occupancy to use the premises at 13117 West Dodge Road for the retail sale of mobile homes and allied equipment. That location is outside the City of Omaha but within the 3-mile area of its zoning jurisdiction. The chief building inspector of the City of Omaha ordered that a certificate of occupancy be issued. It was issued to the plaintiff on February 4, 1969. The certificate recited that the property had been inspected and found suitable for occupancy and use for retail sales of mobile homes and allied equipment and that the proposed use complied with all regulations and ordinances in force relating to such occupancy and use. The certificate showed that the property was zoned as C-1, first commercial.

On February 12, 1969, the plaintiff leased the premises from the owner for a 3-year term at a rental of $500 per month, a total of $18,000. Thereafter, the plaintiff expended approximately $12,000 in preparing the premises for use as a mobile home sales lot. Plaintiff also committed itself for an advertising campaign and obligated substantial sums for acquisition of inventory.

On May 5, 1969, plaintiff was notified by the superintendent of the permits and inspection division, over whose name the certificate of occupancy had been issued, that the certificate had been issued in error and was therefore void. Plaintiff was notified to remove its mobile home sales business from the property within 15 days. On May 8, 1969, plaintiff was advised that the "error" was that first commercial zoning did not allow trailer or mobile home sales and that mobile home sales was not a proper use in that zone. The plaintiff duly lodged his appeal with the Board of Appeals and it was denied on June 9, 1969. Appeal was then duly perfected to the district court and thereafter to this court.

The zoning code of the City of Omaha describes the

first commercial (C-1) district as being primarily to provide neighborhood retail shopping facilities and personal service facilities. Approximately 70 specified commercial uses are permitted in C-1. They include auto sales and service, including open-air displays of new and used cars; auto accessory stores; auto laundries; department stores; gasoline filling stations; garden supply stores, including open-air displays of trees, shrubs and flowers; marine equipment and service stores, including open-air displays of boats; hotels and motels; boarding and lodging houses; and restaurants and theaters, including drive-in establishments. The evidence reflects that the building inspector for a number of years had interpreted the zoning provisions to permit retail sales of trailers in the first commercial zone.

The City contends that retail sales of mobile homes or trailers are limited to the sixth and second commercial districts. The C-6 district is established primarily for automobile oriented businesses, together with other traditional open-air types of retail establishments. All but 2 of the 18 specified uses are also included in the 70 permitted uses in C-1. Trailer sales and rentals constitute one of those two uses. The C-2, second commercial district, permits any commercial use except specified excluded uses. Retail sales of mobile homes or trailers is not excluded.

The City contends that when a ministerial officer issuing a certificate of occupancy does so under a mistake of fact or in contravention of applicable zoning laws, the recipient of the certificate acquires no vested rights and the City is not estopped from revoking such a permit. That is not the situation here.

In this case, there was no mistake of fact. It is seriously questionable that there was even a mistake of law. The certificate of occupancy was lawfully issued by the municipal officer having authority to issue it and in accordance with the departmental interpretation of the

zoning laws which had been in effect for some years. There is no evidence of misconduct, fraud, or deceit of any kind and, in addition, there was substantial good faith expenditure of funds and change of position in reliance upon the certificate issued.

Where a certificate of occupancy or building permit has been issued lawfully, even though in accordance with a questionable interpretation of the zoning ordinances or regulations, courts have generally held that it may not arbitrarily be revoked, particularly where the permittee has incurred substantial expenses and liabilities in reliance upon it. See 8 McQuillin (3d Ed.), Municipal Corporations, § 25.158, pp. 506, 507.

In Parker-Quaker Corp. v. Young, 23 Conn. Supp. 461, 184 A. 2d 553 (1962), the court held that a substantial change in position by the permittee after issuance of the permit and before its revocation was sufficient to create a vested right to proceed and that the City acted illegally in ordering permits revoked. The court said: "* * * the general rule is that any substantial change of position is sufficient. There is no easy formula to resolve issues of this kind. The ultimate objective is fairness to both the public and the individual property owner. * * * The factual situation must be dealt with separately."

In Crow v. Board of Adjustment of Iowa City, 227 Iowa 324, 288 N. W. 145, a building permit issued by the building inspector for a dog hospital in an area zoned for hospitals was involved. In that case, the Board of Adjustment attempted to revoke a building permit after substantial expense had been incurred by the permit holder. The court said: "A building permit duly and legally issued by a municipality is more than a mere license revocable at the will of the licensor. We have held that when the permittee has to some extent acted thereon and thereby incurred expense such permit is not revocable on the grounds that the proposed building and business would be objectionable to residents of the

neighborhood. * * * The ruling of the building inspector was not clearly erroneous nor without basis. On the contrary the proposition was doubtful and fairly debatable and the language fairly susceptible to the interpretation given it."

The facts here involve a certificate of occupancy issued to a lessee rather than a building permit issued to an owner. The prinpicles dealing with arbitrary revocation, substantial reliance, and vested rights are equally applicable to both. Even if it be assumed that the zoning ordinance did not expressly permit retail sales of mobile homes in a C-1 zone, the practical difficulties and hardships to the lessee certificate holder should require relief under section 14-411, R. R. S. 1943.

The City contends that there has been no showing that the property cannot be used for some other fully conforming purpose, but that position treats the plaintiff as an owner rather than the tenant it is. Its business is presumably the business for which it obtained the certificate of occupancy. It is wholly unrealistic to ignore the rights of the holder of a certificate of occupancy simply because the holder of the certificate is not the owner of the property. There is evidence that plaintiff holds lease options to February 28, 1974, and that its obligations and commitments were incurred in contemplation of a 5-year period ending on that date.

We therefore hold that where a certificate of occupancy has been properly obtained in accordance with zoning statutes and ordinances, it may not be arbitrarily revoked where the certificate holder has incurred substantial expenses, commitments, and obligations in good faith reliance upon the certificate. Each case must be determined on its own facts, with the ultimate objective of fairness to both the public and the individual certificate holder. Such a rule protects the interests of a permittee who has acted under a permit in good faith but withholds protection on permits where good faith

does not appear. It thus protects the public interest in an effective regulation of land uses. See Shalvey v. Zoning Board of Review, 99 R. I. 692, 210 A. 2d 589 (1965).

The facts here clearly establish a balance of the equities in favor of the plaintiff as against the general public represented by the municipal authorities. The Board of Appeals and the City of Omaha should be restrained from revoking the certificate of occupancy here during the effective period of plaintiff's lease or valid extensions thereof. The judgment is reversed and the cause remanded to the district court for further proceedings in accordance with this opinon.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.