FLOYD SCHLUETER et al., Plaintiffs-Appellees, v. COUNTY OF ST. CLAIR, Defendant-Appellant—(MRS. DALE HELMS et al., Intervening Defendants-Appellants.)

(No. 72-305; ▮▮▮▮▮▮▮

Fifth District—May 15, 1974.

Freeark, Gunn & Harvey, of Belleville (Ted Harvey, Jr., of counsel), for appellants Mrs. Dale Helms et al.

Robert H. Rice, State's Attorney, of Belleville (Eugene H. Widman, Assistant State's Attorney, of counsel), for appellant County of St. Clair.

Karns, Starnes, Nester & Stegmeyer, of Belleville (John M. Karns, of counsel), for appellees.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendants appeal from a declaratory judgment which held the zoning ordinance of St. Clair County unconstitutional and void in its application to plaintiffs' property prohibiting its use as a sanitary landfill.

After plaintiffs' petition to re-zone the real estate in question was denied by the St. Clair County Board of Supervisors, the plaintiffs filed this action for declaratory judgment in the circuit court of St. Clair County alleging that the St. Clair County zoning ordinance was unconstitutional as it applied to the real estate owned by the plaintiffs. The trial court granted judgment for the plaintiffs and directed the Zoning Board to issue a special use permit. The County of St. Clair and intervening defendants-appellants appeal.

The sole argument raised by the defendants on appeal is that the St. Clair County zoning ordinance is not unconstitutional as applied to plaintiffs' property. Appellees contend the opposite.

■■ The general scheme of zoning may be valid, yet, when applied to a particular piece of property and a particular set of facts and circumstances, it may be so arbitrary and unreasonable as to result in a confiscation of the property. In that situation, as applied to the disputed real estate, the ordinance is void. Yokley, Zoning Law and Practice, vol. I, p. 64, par. 2—16; *Johnson v. Village of Villa Park*, 370 Ill. 272; *Lee v. City of Chicago*, 390 Ill. 306; *Anderman v. City of Chicago*, 379 Ill. 236.

Intervening defendants' primary objection to the establishment of a landfill which would be located on land that had formerly been strip mined is grounded on their fear that a landfill operation would contaminate their water wells.

Dr. Robert Bergstrom, head of the Ground-Water Geology Section of the Illinois Geological Survey, conducted tests at the proposed site, submitted a report to the Environmental Protection Agency on August 2, 1971, and testified before the Zoning Board of Appeals and at the hearing before the court. He testified that there was no probability of leachate from the sanitary landfill contaminating surrounding water wells or ground water. Ground water at present is moving into the strip-mined area and away from surrounding water wells. Even if a ground water mound formed in the strip mine, the movement of ground water into the mine could be continued by controlling the level of the lake on the eastern portion of the mine. Even if the water were to move laterally out

of the mined area, the leachate would be demineralizd by moving through the glacial drift. In short, it was his opinion as an experienced geologist that there was practically no possibility of pollution to surrounding ground water reservoirs or wells; that no undesirable effects would ever occur to users of ground water in the area. No evidence of a scientific nature was offered to refute his findings and opinion. He recommended that monitoring wells be drilled in and around the landfill site as an added precaution to monitor ground water movement and insure that no pollution of surrounding water wells or ground water reservoirs occurred. These wells were required as a special condition in the permit issued by the Environmental Protection Agency. He concluded that a properly operated sanitary landfill did not pose a hazard to ground water reservoirs and additionally was a means of reclaiming the strip-mine lands for productive purposes. He stated that the site in question would be perfectly safe as a municipal-type sanitary landfill for which a permit had been issued.

Wilbur Palmquist, head of the Land Pollution Control Division of the Environmental Protection Agency, was of a like opinion that this worked-out strip mine was a perfectly safe place to conduct a sanitary landfill. He stated that "exorbitant" safeguards were required under the permit issued by his agency which would additionally conduct periodic inspections of the site. Access to the landfill would be from Illinois Route 157, a heavily traveled two-lane road which runs from the Belleville area, south to Cairó, Illinois and southern states. Commercial vehicles of all types use these roads. The evidence was that the maximum of perhaps 120 sanitary-refuse trucks that would bring municipal refuse to the landfill would be an insignificant addition to the existing traffic on these highways. Access to the landfill itself from Route 157 would be over a private haulage road.

There was also the suggestion that leachate might escape from the strip mine into old underground mines in the area. Maps from the Illinois Bureau of Mines and from Peabody Coal Company were introduced in evidence. Henry Davis, an engineer with Peabody Coal Company, testified and was of the opinion that there had been no breakthrough from underground mines into the strip-mined area. If this had occurred, it would have been apparent at the time the strip mine was in operation. This was also confirmed from test borings made by Peabody to locate existing coal and, additionally, to rule out such a possibility.

One of the witnesses for the defendants testified that he lived on the edge of the strip-mine area for 11 years; that there was a well on his land which produced water until the strip mine got there. When the strip mine got to within 1000 feet of his ground, the well dropped to a

depth of 1 to 1½ feet and he had to haul water in. However, he drank the water from the well all of the time that he lived there.

Another witness testified that he lived 1200 feet from the water pit that was on the strip-mine area; that he had a water well on his property and that all during the time the strip mine was in operation neither the depth nor clarity of the water was affected. He further testified that from his own memory he knew that the Sugar Creek Mine had a mine shaft another 1800 feet from the strip-mine ground and an air shaft about 300 feet closer.

The trial court found that the land in question could not at present be used productively for agricultural purposes but could be reclaimed for productive agricultural use by the operation of a sanitary landfill; that expert scientific evidence established that ground waters and neighboring water wells would not be contaminated or affected by the operation of the landfill; that no appreciable increase in traffic would result; that surrounding property values would not be diminished; that the operation of a landfill could result in the reclamation of the strip-mine property and should appreciate the surrounding property. The court further found that the value of plaintiffs' property would be greatly reduced if their application was denied, while there would be no gain to the public and the adjoining land owners if the permit was denied.

In *First National Bank v. County of Lake*, 7 Ill.2d 213, 226, 228, our supreme court said:

"* * * Where there is room for a legitimate difference of opinion concerning the reasonableness of an ordinance governing the use of private property or where such question of reasonableness is fairly debatable, the courts will not interfere with the legislative judgment. [Citations.] Among the particular facts and circumstances to be taken into consideration in determining whether a purported exercise of the police power is so unreasonable and confiscatory as to constitute an unlawful invasion of private rights are the character of the neighborhood, the zoning classification and use of nearby properties, the extent to which property values are diminished by the particular zoning restrictions involved, and the gain to the public compared to the hardship imposed on the individual property owner. * * *

* * *

In determining the validity or invalidity of a given zoning classification, the question as to whether or not it is in conformity with surrounding existing uses and the zoning classification of nearby property is considered of paramount importance."

We find there was no room for difference of opinion as to the reason-

ableness of the ordinance in question as applied to plaintiffs' property, nor was this question fairly debatable.

■■ The trial court's findings in this case are supported by clear and convincing evidence. The judgment of the trial court of St. Clair County is affirmed.

Judgment affirmed.

EBERSPACHER and CREBS, JJ., concur.