LLOYD R. KITRELL ET AL., APPELLANTS, V. BOARD OF
ADJUSTMENT OF THE CITY OF HASTINGS,
NEBRASKA, ET AL., APPELLEES.

266 N. W. 2d 724

Filed June 7, 1978. No. 41532.

William G. Cambridge, for appellants.

Michael E. Sullivan of Helmann & Sullivan, for appellees Sherman et al.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

CLINTON, J.:

The issues on this appeal are determined by construction of various provisions of the zoning ordinance of the City of Hastings, Nebraska. The appellees, Sherman, applied to the City of Hastings for a building permit to construct a paved tennis court and appurtenances in the backyard of their residence located in a single-family residential area of Hastings. The building inspector of the city issued the building permit. The appellants, Kitrell et al., whose residences are on lots contiguous to that of the appellees, appealed to the board of adjustment pursuant to provisions of section 19-907, R. R. S. 1943, and the pertinent parts of the zoning ordinance, objecting to the issuance of the building permit on various grounds. The board of adjustment dismissed the appeal and appellants then appealed to the District Court under the provisions of section 19-

912, R. R. S. 1943. The District Court affirmed the action of the board of adjustment and appellants then appealed to this court.

The proposed tennis court and its appurtenances are to consist of a hard-surface court, 120 feet by 46 feet in dimension, net posts and anchors, a 10-foot high chain link backstop at the ends and along the east side, and lights for night play mounted on two utility poles on the east side of the court. The dimensions of appellees' lot are as follows: 104.04 feet on the street or front line, 164.08 feet on the rear lot line, and sides of 145 feet and 156.93 feet. The rear lot line of the lots of two of the appellants abut the rear lot line of the appellees' property. The lot of the third appellant corners that of the appellees.

The assignments of error raise the following issues: (1) Is the proposed tennis court under the provisions of the ordinance an eligible accessory use to the main use as a residence? (2) Are the backstops "fences" within the ordinance definition of that term, thus requiring a separate permit, and if they are fences, are the specifications in violation of the ordinance? (3) Are the tennis court and its appurtenances structures within the meaning of that term in the ordinance and, if so, did the specifications violate the terms of the ordinance in any way?

The provisions of the zoning ordinance (paraphrased except where otherwise indicated by quotation marks) which must be considered in connection with the first issue are the following:

Section 40-26: In one-family residential districts, permitted use includes the following: "(a) Dwellings, one family. . . .

"(i) Accessory uses, . . . customarily incident to the above uses and located on the same lot therewith, not involving the conduct of a business or industry."

Section 40-6 provides for the erection of buildings and structures and uses "clearly incidental to, and

customarily and commonly associated with the main permitted use of the premises." Such incidental uses are to be "maintained and conducted as to not produce noise, vibration, concussion, dust, dirt, fly ash, odor, noxious gases, heat or glare which is injurious, damaging, unhealthful or disturbing to adjacent property, or the users thereof, . . . ." The latter provision is a general one pertaining to incidental use in various types of zoning districts, including industrial districts. With reference to one and two-family residential districts, 40-6 (b) (6) specifically permits: "Such additional uses as private swimming pools, gardens, customary pets, television and radio receiving antennae not exceeding sixty feet in height, . . . play equipment, . . . and other similar uses. Any accessory use other than a residential building or garage, which exceeds ten feet in height shall be located a distance inside the property line at least equal to one third its height. . . .

"The determination of the eligibility of a proposed use as an accessory use shall be made by the building inspector, an appeal can be made from his decision" to the board of adjustment.

The appellants first argue that a tennis court is not a customary use in a one-family residential district and is on that account not an eligible accessory use. The record establishes that there are three private tennis courts in the City of Hastings. One is part of an apartment complex; the second is located on the grounds of a monastery; and the third, on the grounds of a private college.

Whether a use is customary is not to be determined merely by a mathematical count. State v. Smiley, 182 Neb. 211, 153 N. W. 2d 906. Numbers are merely a factor which may be considered. More important is the fact of whether the accessory use is a recognized incidental use. Obviously, most residential lots are not sufficiently large to accommodate a tennis court, hence such use is not customary

in any significant numerical sense. The lot of the appellees is suitable, and the record establishes that it was selected as a home site with a view to the construction of a tennis court as an incidental use. More important perhaps is the fact that the ordinance explicitly recognizes as accessory uses "swimming pools . . . and other similar uses." It would be impossible to say that a swimming pool is, under the ordinance, not an accessory use merely because no swimming pools in fact existed. A tennis court on premises adequate to accommodate such a facility is a "similar use" under the provisions of the ordinance. Although a use may in a nontechnical sense not be an accessory use where not customary, it is nevertheless an accessory use where defined by the ordinance to be such. See City of Sheridan v. Keen, 34 Colo. App. 228, 524 P. 2d 1390, where it is said: "Although . . . the use may be 'incidental' within the non-technical meaning of that word, it cannot be an incidental use in legal terms if the governing body has expressly prohibited it (by zoning ordinance)." It would seem to follow that where the use is expressly permitted, the fact that it is not customary does not deprive it of its status as an accessory use. There is a dearth of authority on the matter and we find only one case on point. A tennis court was held to be an accessory use in Hardy v. Calhoun, 383 S. W.2d 652 (Tex. Civ. App.); Annotation, 32 A. L. R. 3d 424 at p. 435.

The appellants contend that the building inspector and the District Court erred in not determining that the use as a tennis court was an impermissible use under section 40-6 because it would "produce noise, . . . concussion, . . . heat or glare, . . . disturbing to adjacent property, . . . ." We certainly cannot say that as a matter of law the determination was in error or clearly wrong as a matter of fact. The ordinary noise and other possible factors of annoyance arising from use of a tennis court are not likely to be

greater than those from other permitted or specified recreational uses such as a swimming pool.

The building inspector was correct in determining that a tennis court was an eligible accessory use under the provisions of the Hastings ordinance. A decision of the proper official or board in interpreting and applying a zoning ordinance will not be disturbed on appeal to this court unless it is illegal or from the standpoint of fact is not supported by the evidence, is arbitrary, unreasonable, or clearly wrong. Weber v. City of Grand Island, 165 Neb. 827, 87 N. W. 2d 575.

The sections of the ordinance which must be considered in connection with the second issue are the following: Section 40-11 defines the term "fence" in the following language. "(1) Fence or Screen Wall. Any vertical structure, other than a building or plant material, which is for the purpose of obstructing visual observation, or for the purpose of obstructing pedestrian, automotive or animal movement, or for the purpose of beautification, and which is attached to the ground or to a building, but excluding retaining walls." The section then classifies fences in three categories in accordance with the degree of perforation. It likewise lays down certain general requirements for fences in eight categories. The first seven categories all refer to fences on lot lines and regulate height and perforation according to position on lot lines. Fences as so defined and regulated cannot be constructed without the filing of an application containing certain descriptive material and the issuance of a building permit. In this case, no building permit was issued for the backstop and no application containing the requisite information was filed.

Appellants contend that the backstops are fences and since they exceed fence construction height requirements, and since no permit has been issued, they would violate the ordinance.

It is to be noted that "fence or screen wall" is defined in the ordinance in terms of purpose, i.e., "for the purpose of obstructing visual observation, or for the purpose of obstructing pedestrian, automotive or animal movement, or for the purpose of beautification." The record establishes clearly that the backstop is an integral and usual part of tennis court construction and has none of the purposes mentioned. Its purpose is to retain errant balls and thus facilitate their retrieval and prevent balls from going upon adjacent premises. The backstops are not located on property lines but about 10 feet therefrom.

This court was confronted with a similar question in Shamberg v. City of Lincoln, 174 Neb. 146, 116 N. W. 2d 18. In that case the Lincoln ordinances did not regulate construction of tennis courts but did regulate fences. The ordinance, however, did not give any special definition of fences and the city sought to prosecute Shamberg because his tennis court backstop exceeded the height limitations for fences. We said there: "What then is the plain and ordinary meaning of the word 'fence' as used in the ordinance?

"The word is defined in 36A C.J.S., Fences, § 1, p. 258: 'A fence is an inclosing structure, composed of any material which will present a sufficient obstruction, about a field or other space intended to prevent intrusion from without or straying from within.'

"It is hardly to be said that a tennis ball is something 'straying from within' although the purpose of the backstops and sidestops is to keep a tennis ball within the playing area. Substantially the same definition is found in 22 Am. Jur., Fences, § 2, p. 513, and in Webster's Unabridged Dictionary (2d Ed.), p. 674.

"How did the city in the ordinance construe the term so far as tennis court 'backstops' are concerned? In section 209 of ordinance No. 5636 of the City of Lincoln, it provided that a building was 'any

structure,' etc. In section 246, it provided that a structure included 'backstops for tennis courts,' and in the same area here involved, it provided that no building should exceed 35 feet in height. Obviously, the city in enacting the ordinance did not consider a tennis court backstop to be a fence within the meaning of the ordinance but a structure subject to the code height for a building." We granted an injunction enjoining the prosecution.

The record here establishes that appellees propose to place on the backstops movable cloth, somewhat translucent, windscreens. The record also establishes that the building inspector was unaware that this item was to be included in the construction. He has not passed on that item, so we do not. The building inspector was correct in determining that the backstops were not fences within the meaning of the ordinance.

The appellants next argue that the tennis court is a "structure" within the terms of the ordinance, and, as a structure, the tennis court and its appurtenances violate the "height" of structures and "yard" restrictions of the zoning ordinance.

Section 40-1 defines a structure as follows: "Anything constructed or erected, which requires location on the ground, or attached to something having a location on the ground; including, but not limited to signs, and excepting utility poles, fences and retaining walls."

Section 40-27 defines height and area regulations as follows: "In District R-1 the height of buildings, the minimum dimensions of lots and yards and the minimum lot area per family permitted on any lot, shall be as follows:

"(a) Height. Buildings or structures shall not exceed thirty-five feet, and shall not exceed two and one-half stories in height. . . .

"(d) Rear yards. The depth of the rear yard shall be at least twenty percent of the depth of the

lot, but such depth need not be more than thirty feet.''

Section 40-4 provides that except as hereinafter provided: ''(a) No building or structure shall be erected, constructed, reconstructed, moved or altered, nor shall any building, structure or land be used for any purpose other than is permitted in the district in which such building, structure or land is situated.

''(b) No building or structure shall be erected, constructed, reconstructed, moved or altered to exceed the height or area limit or the yard or parking requirement herein established for the district in which such building or structure is located.''

Section 40-1 defines yard as follows: ''Yard. An open space at grade between a building and the adjoining lot lines, unoccupied and unobstructed by any portion of a structure from the ground upward, *except as otherwise provided.''* (Emphasis supplied.)

It seems clear to us that from a reading of the various interrelated provisions of the zoning ordinance, the following is clear. Accessory uses are clearly exceptions to the ''yard'' and ''height'' requirements of the ordinance. A yard is to be unobstructed ''except as otherwise provided.'' ''Swimming pools . . . and other similar use'' are literally structures within the meaning of the term ''structure'' as defined in the ordinance, but obviously come within its ''otherwise provided'' provision, for if they did not, there could be no accessory uses and these are clearly provided for. So far as height requirements are concerned, the ordinance has a special provision relating to accessory use which we quoted during our discussion of the first issue, viz: ''Any accessory use other than a residential building or garage, which exceeds ten feet in height shall be located inside the property line (a distance) at least equal to one-third its height.'' From the record it

appears that since the poles and lights may be in violation of this requirement, the height of these appurtenances, if they are to be constructed, must be reduced in height to conform.

AFFIRMED AS MODIFIED.