The Omaha Fish and Wildlife Club, Incorporated, appellee, v. Community Refuse Disposal, Inc., and Ronald B. Roots, appellants.

329 N.W.2d 335

Filed January 7, 1983. No. 44485.

Herbert J. Elworth of Casey & Elworth, and Croker, Huck & McReynolds, for appellants.

Michael J. Mooney of McCormack, Cooney, Mooney & Hillman, P.C., for appellee.

Krivosha, C.J., Boslaugh, McCown, Clinton, White, Hastings, and Caporale, JJ.

Hastings, J.

The defendants have appealed from an order of the District Court permanently enjoining them from operating a solid waste disposal area on certain real property located in Cass County. On appeal to this court, the defendants assign as error that the court (1) incorrectly found that the Cass County zoning ordinance prohibited operation of a licensed solid waste disposal landfill in an area zoned "A" Rural and Public Use District; (2) failed to find that the

particular site was immune from zoning control because the use as a landfill operation was in the performance of a governmental function not subject to zoning control; and (3) wrongfully revoked the approval granted by the Cass County officials under circumstances where the defendants had incurred substantial expense in good faith reliance upon such approval. We affirm.

The waste disposal area is located on farmland within Section 33, Township 13 North, Range 12 East of the 6th P.M. in Cass County, Nebraska, leased by defendants from the owner. It contains a large ravine which the defendants propose to fill with solid, baled waste material hauled under contract from the city of Omaha. Once filled, it is the intent of the owner of the property to reconvert this land to agricultural use.

The plaintiff is a nonprofit club owning recreational land 1 mile northeast of the landfill site. This land is located just south of the Platte River and consists of several small recreational lakes and various campgrounds. The plaintiff contests the defendants' use of the land in question as a violation of the Cass County zoning ordinance.

On October 4, 1978, the defendants made application to the Nebraska Department of Environmental Control for a license to operate a solid waste disposal area. As required by Neb. Rev. Stat. § 81-1518 (Reissue 1981), a hearing was had before the board of commissioners of Cass County on November 6, 1978. Notice of such hearing was published once in The Plattsmouth Journal on October 26, 1978. The result of that hearing was that a motion was passed that the "board approve the site as presented." It was not until June of 1979 that the plaintiff learned of the proposed use to be made of the property by the defendants. The plaintiff protested this use to the Cass County board by letters dated July 20, 1979, and November 6, 1979, and in person at a meeting of the board held on July 3, 1979. It was the plaintiff's po-

sition that in order to operate a landfill on the premises a change of zoning was required, which necessitates a more elaborate and extensive notice procedure. However, these protests were to no avail and this action was filed on December 6, 1979. Following the sustaining of a demurrer and dismissal of the petition, that action of the trial court was appealed to this court. We reversed and remanded for further proceedings. *Omaha Fish and Wildlife Club, Inc. v. Community Refuse, Inc.*, 208 Neb. 110, 302 N.W.2d 379 (1981). The present proceeding followed.

The Cass County zoning ordinance is set up on a permissive basis, i.e., each district is outlined to allow only certain uses. The land in question is zoned "A" Rural and Public Use District. Article IV of the ordinance discusses what is a permissive use in an "A" Rural and Public Use District. Section 402 of that article states in part: "A building or premises shall be used only for the following purposes: 1. Single family dwellings . . . 2. Farming . . . 3. Lumbering . . . [4. does not appear.] 5. Publicly owned or operated properties . . . 6. Public parks . . . 7. Railroad tracks . . . 8. Single-family dwellings. 9. Churches . . . 10. Public elementary and high schools . . . 11. Cemeteries . . . 12. Hospitals . . . 13. Accessory building and uses customarily incident to any of the above uses . . . ." Nowhere is it stated that landfills are permitted uses in an "A" Rural and Public Use District. Article VIII of the zoning ordinance describes "I" Industrial District regulations, which permit a use "for any purpose not in conflict with any resolution of Cass County regulating nuisances or laws of the State of Nebraska; provided . . . that no . . . occupancy permit shall be issued for any of the following uses . . . until and unless the location . . . shall have been approved by the Board of Commissioners, after report by the Cass County Planning Commission. . . . Rendering and storage of dead animals, offal, garbage, or waste products." In addition, article XI pro-

vides Additional Use regulations, which provide that "The Board of Commissioners may, by special permit after public hearing, authorize the location of any of the following . . . uses in any district from which they are prohibited . . . 17. Industrial uses upon which the Board is required to pass under Article VIII."

The defendants advance three reasons why the maintenance of a solid waste disposal landfill is not prohibited in an area zoned "A" Rural and Public Use District. In the first place, they argue, nowhere in the six districts originally contained in the zoning ordinance is there any provision for the allowance of utilities and services. However, they say these uses consistently are allowed in all districts throughout the county, e.g., water, gas, and sewer lines, and telephone and electric power lines. The Cass County comprehensive plan states that "Utilities and services, as defined in this report, include water, sanitary and storm sewers, solid waste disposal, electric power, natural gas, and telephone service." Therefore, they conclude, having allowed the enumerated utility services, the county must permit the operation of a solid waste disposal service in all districts. Of course, it cannot seriously be contended that the *providing* of electricity, gas, water, sewers, and like utilities is not "accessory . . . uses customarily incident to any of the . . . uses" permitted by "A" Rural and Public Use District regulations. However, generating electricity, manufacturing gas, treating water, or processing sewage is quite another matter. As stated in *Stones v. Plattsmouth Airport Authority,* 193 Neb. 552, 554-55, 228 N.W.2d 129, 131 (1975): "A comprehensive development plan is merely a policy statement that may be implemented by a zoning resolution. . . . It is the zoning resolution which has the force of law. . . . If there is a conflict between a comprehensive plan and a zoning ordinance, the zoning ordinance contains the controlling provisions when questions of a

citizen's property rights are at issue." The zoning ordinance plainly does not authorize the operation of a solid waste disposal area in an "A" Rural and Public Use District, anything in the comprehensive development plan to the contrary notwithstanding.

Next, it is contended that a landfill is an accessory use as a reclamation project on agricultural land. The defendants cite the case of *Schlueter v. County of St. Clair,* 19 Ill. App. 3d 470, 311 N.E.2d 735 (1974), which involved an attempt to utilize a landfill operation to fill an open strip mine area. In allowing such an operation contrary to the plain language of the zoning ordinance, the court stated "that the land in question could not at present be used productively for agricultural purposes but could be reclaimed for productive agricultural use by the operation of a sanitary landfill; that expert scientific evidence established that ground waters and neighboring water wells would not be contaminated or affected by the operation of the landfill; that no appreciable increase in traffic would result; that surrounding property values would not be diminished; that the operation of a landfill could result in the reclamation of the strip-mine property and should appreciate the surrounding property." *Id.* at 473, 311 N.E.2d at 737. We would only point out that the evidence relied upon by the Illinois court is not present in this record. Additionally, the operation of a *commercial* sanitary landfill as a part of a farming operation would hardly be considered an "accessory use" which is "a recognized incidental use" within the meaning of *Kitrell v. Board of Adjustment,* 201 Neb. 130, 266 N.W.2d 724 (1978).

Finally, the defendants claim that the operation of a landfill under a license from the Department of Environmental Control is a "public operation" within the meaning of subsection 5 of article IV of the zoning ordinance. We should add parenthetically that the record does not disclose that the department has actually issued the permit. The exact language

of the ordinance permits "Publicly *owned* or *operated* properties." (Emphasis supplied.) The landfill operation with which we are here concerned is neither publicly owned nor operated. We believe that the plain language of the zoning ordinance does not permit the operation of a commercial solid waste landfill operation, and as a result thereof it is prohibited.

The second assignment of error suggests that because the defendants have contracted to perform certain services for the city of Omaha in the disposal of baled refuse, somehow it is performing a governmental function not subject to zoning control. We do not find it necessary to examine the various authorities, such as *Witzel v. Village of Brainard,* 208 Neb. 231, 302 N.W.2d 723 (1981), in support of such a contention. This was not an issue raised by the pleadings, nor does the record disclose that the case was tried on that theory. The pleadings frame the issues between the parties, and the evidence must be confined to those issues. *Era v. Sapp Bros. GMC, Inc.,* 189 Neb. 366, 202 N.W.2d 750 (1972). We would observe that Neb. Rev. Stat. § 14-102(28) (Reissue 1977) does provide that metropolitan cities "shall have power by *ordinance* . . . to make contracts for the removal or disposal of garbage . . . ." (Emphasis supplied.) However, no such ordinance appears in the record. Other than a passing reference to a contract with the city of Omaha to haul garbage, neither is a written contract to that effect contained within the evidence adduced. The second assignment of error is without merit.

The defendants' final argument concerns itself with the matter of detrimental reliance. That is, they claim that the grant of permission to an occupier of land for a particular use, coupled with the incurrence of substantial expense and obligation in good faith reliance thereon, gives rise to a vested right in such occupier for such use of the land, even though it may be in violation of the zoning ordi-

nances. In support of their argument the defendants cite us to the case of *A. C. Nelsen Enterprises, Inc. v. Cook,* 188 Neb. 184, 195 N.W.2d 759 (1972).

In *Nelsen* the city of Omaha had revoked a certificate of occupancy issued to the plaintiff authorizing it to use certain premises for the retail sale of mobile homes. The property was zoned C-1, which permitted the use of the premises for auto sales, auto laundries, department stores, filling stations, etc., but not for the display and sale of mobile homes. This use was restricted to a C-6 zoning district, which allowed 18 specified uses, all but two of which were also allowed in C-1 districts. The certificate as originally issued recited that the property had been inspected and was suitable for the proposed use, was properly zoned, and complied with all regulations and ordinances. Some 3 months later, Nelsen was advised that the certificate had been issued in error and was void, and that it would have to discontinue that business activity.

The record in *Nelsen* disclosed that before revocation of its permit, the plaintiff had leased the premises for a 3-year term at a total rental of $18,000 and, in addition, had expended approximately $12,000 in preparing the premises for its intended use. In setting aside the revocation of the permit, we said: "In this case, there was no mistake of fact. It is seriously questionable that there was even a mistake of law. The certificate of occupancy was lawfully issued by the municipal officer having authority to issue it and in accordance with the departmental interpretation of the zoning laws which had been in effect for some years. . . . [T]here was substantial good faith expenditure of funds and change of position in reliance upon the certificate issued.

"Where a certificate of occupancy or building permit has been issued lawfully, even though in accordance with a questionable interpretation of the zoning ordinances or regulations, courts have generally held that it may not arbitrarily be revoked, par-

ticularly where the permittee has incurred substantial expenses and liabilities in reliance upon it. . . .

. . . .

"We therefore hold that where a certificate of occupancy has been properly obtained in accordance with zoning statutes and ordinances, it may not be arbitrarily revoked where the certificate holder has incurred substantial expenses, commitments, and obligations in good faith reliance upon the certificate." *Id.* at 186-88, 195 N.W.2d at 761-62.

There are a number of factors which distinguish the present case from *Nelsen.* Here, no permit was ever issued, although it is clear that the Cass County commissioners approved the proposed site for the requested use. However, nothing was granted "in accordance with the . . . interpretation of the zoning laws which had been in effect for some years." As a matter of fact, it was the testimony of the Cass County zoning administrator that the county had no jurisdiction as far as zoning of landfills was concerned and that he had never expressed an opinion to anyone else as to that fact. It was the October 15, 1979, written opinion of the Attorney General in response to a request from the Department of Environmental Control which first notified the county officials that it was the county governing body, not the state department, which was to determine the adequacy of or compliance with local zoning ordinances.

There is evidence in the record that the defendants spent somewhere between $25,000 and $60,000 in engineering and legal fees for the development of this project sometime after approval of the site by the county and prior to the filing of this lawsuit in December of 1979. More importantly, however, is the exact time frame within which the expenditures were made. At one point in the record, when asked if he was saying that $60,428.74 in expenses was incurred subsequent to the board approval and prior to the filing of the lawsuit, Ronald B. Roots answered:

"I'd say it in my way is prior to the lawsuit based on all the approvals I had." At another point in his testimony, Mr. Roots said that he had incurred legal expense of $5,261.20 in legal fees "through these hearings and up to September [sic] 10th when this suit was brought." He also mentioned a commitment on the lease of approximately $6,500 on October 1, 1979, and engineering and soil sampling totaling $25,929.63 as of December 10th, 4 days after this action was filed. Any contract obligation to the city of Omaha was incurred sometime after December of 1980.

In short, the defendants have failed to establish that their expenditure of funds was in good faith, i.e., that it was made before the question of improper zoning was raised. According to a copy of the July 3, 1979, proceedings of the Cass County commissioners, they were, at that time at least, aware that a substantial question existed. In a somewhat similar case we said that "the appellant had not established any vested right to use these premises for the purpose here contended when the change was made. Consequently, we find that the ordinance passed on December 30, 1948, which eliminated the use of the premises for that purpose, lawfully extinguished his permit and any rights he may have had thereunder." *City of Omaha v. Glissmann,* 151 Neb. 895, 904, 39 N.W.2d 828, 834 (1949).

For the foregoing reasons, we find that the judgment of the District Court was correct and is affirmed.

AFFIRMED.