CIRCLE 76 FERTILIZER, INC., A NEBRASKA CORPORATION, APPELLANT, V. DALE E. NELSEN, ALSO KNOWN AS DALE NELSON, ET AL., APPELLEES, MID-STATE CO-OP, INC., A NEBRASKA CORPORATION, APPELLANT, FIRST NATIONAL BANK OF HOLDREGE, INTERVENOR-APPELLEE.

365 N.W.2d 460

Filed April 5, 1985.   No. 84-343.

Steven O. Stumpff, for appellant Circle 76 Fertilizer.

Brad Roth of Black & Sennett, for appellant Mid-State Co-op, Inc.

Curtis A. Sikyta, for appellee State Bank of Scotia.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

This case deals with the relative priority of a security interest held by the State Bank of Scotia under Neb. U.C.C. § 9-312 (Reissue 1980), a fertilizer lien claimed by the plaintiff, Circle 76 Fertilizer, Inc., under Neb. Rev. Stat. §§ 52-1101 et seq. (Reissue 1984), and a petroleum products lien claimed by Mid-State Co-op, Inc., under Neb. Rev. Stat. §§ 52-901 et seq. (Reissue 1984), with preference alleged as to crops in possession under Neb. U.C.C. § 9-310 (Reissue 1980). These conflicting claims arose, during the year 1981, over money advanced by each party to and crops grown by farmers by the name of Dale and Geraldine Nelsen.

The case arose as a suit for money judgment by Circle 76 against the Nelsens for failure to pay a promissory note held by Circle 76 for fertilizer and labor in applying the fertilizer. Circle 76 applied fertilizer through the first week in August 1981 to the Nelsens' land. Circle 76 claimed it agreed to carry the Nelsens' fertilizer and chemical bill until harvest, based on representations made by the bank that the Nelsens were financially secure.

Circle 76 sought judgment in its favor for $85,592.64, claiming that any security interest held by the defendant bank was subordinate on the grounds of equitable estoppel. Circle 76 also sought priority over Mid-State, which had filed a petroleum products lien against the Nelsens' corn crop on December 2, 1981. Circle 76 also claimed priority against C. Walter and Elaine McGuire, the lessors of the Nelsens' land, and the McGuires' intervenor, First National Bank of Holdrege. However, the interests of these last two defendants are not represented in this appeal.

The State Bank of Scotia cross-claimed, alleging it had priority over the crops in question by virtue of its perfected security interest held against all the Nelsens' property, including their crops. The bank had advanced funds to the Nelsens on June 19, 1980, and had filed its financing statement and security agreement on July 10, 1980. The financing statement included an after-acquired property clause, a description of the collateral, and a description of the land on which the crops were to be grown. The Nelsens' line of credit was renewed by the

bank on December 20, 1982. The bank sought priority over all other liens, judgment against the Nelsens, and recovery of the value of the corn delivered to and sold by defendants Mid-State and McGuires, which was subject to the bank's security agreement.

Mid-State cross-claimed, seeking priority for its petroleum products lien and the right to keep the proceeds from the corn sold by it and credited against the Nelsens' debt. It also sought a deficiency judgment from the remainder of the Nelsens' debt. It argued its priority was established either under § 9-312(2) or § 9-310.

Section 9-312(2) allows a perfected security interest in crops to have priority over a previous security interest if new value (1) was given the debtor to produce new crops during the production season and (2) not given more than 3 months before the crops became growing crops, provided the earlier security interest secured obligations due more than 6 months before the crops became growing crops.

On the other hand, § 9-310 would allow a statutory lienholder in possession of the collateral to have priority over a prior security interest where the lienholder had provided materials or services which enhance the value of the collateral. The only exception is where the statute establishing the lien specifically denies such priority.

Finally, Mid-State argued for the first time on rebuttal that the bank's security agreement did not clearly show that the corn held by Mid-State was subject to the bank's security interest, since the legal description of Section 11 of the Nelsens' land in the security agreement was different from the Section 11 description listed in Mid-State's lien.

The district court found that Circle 76 had no valid lien on the Nelsens' 1981 corn crop for failure to comply with the statutory requirements creating such a lien. See §§ 52-1101 et seq. Section 52-1103 requires the lien to be filed within 60 days after the last product was furnished or the last labor performed. Even if the court employed a liberal construction which would allow the lien to be filed either 60 days before or after the last delivery of goods or labor, the lien filed by Circle 76 on May 7, 1981, would not be within these statutory limits. Since the last

fertilizer was supplied on around August 1, 1981, the filing was still more than 60 days prior to that date.

Second, the court found that Circle 76 failed to establish the representations of the Nelsens' financial stability made by the bank were so materially false as to require the application of equitable estoppel.

The court found that Mid-State's petroleum products lien did not have priority under § 9-312(2), since the court refused to substitute the word "lien" for "security interest" within the meaning of § 9-312(2). The section was simply inapplicable. With respect to the applicability of § 9-310, the court apparently found it inapplicable either because (1) the lien was not properly foreclosed under § 52-903, and thus invalid, or (2) the court did not find the lienholder to be in possession of the collateral as required by that section.

The court dismissed Mid-State's contention that the bank's security interest and Mid-State's lien did not cover the same crops, since Mid-State failed to raise the issue in its pleadings. It only arose after the close of each claimant's case in chief.

The court found that the bank had a perfected security agreement which granted it priority over all other purported liens on the Nelsens' 1981 corn crop. It found the amount of the security interest to be $143,750, plus 12.5 percent annual interest from December 20, 1982, the date the Nelsens' line of credit was renewed. It ordered all amounts held by the clerk of the district court for the case credited against this amount.

The court awarded judgment to the bank against Mid-State for the corn it received, plus prejudgment interest from the date Mid-State recorded a transfer of the corn. The bank was also granted judgment and interest thereon against defendants McGuire for corn received by them. The court awarded Circle 76 a judgment against the Nelsens for $78,653.18. Mid-State was awarded a judgment of $53,308.86, plus interest from January 21, 1982. Motions for new trial were denied, and this appeal followed.

Circle 76 assigns as error the district court's denial to grant it relief based on equitable estoppel.

Mid-State assigns as error the district court's (1) finding that the State Bank of Scotia had sustained its burden of showing

the crops received by Mid-State Co-op, Inc., were subject to the bank's security interest; (2) finding that the bank's security interest had priority over Mid-State's petroleum products lien; and (3) granting prejudgment interest on the award made to the bank from Mid-State Co-op, Inc.

With respect to the estoppel issue raised by Circle 76, in Nebraska there are six elements which must be present to establish equitable estoppel. They are as follows:

> [A]s to the party estopped, (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts; as to the other party, (4) lack of knowledge and of means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

*Cillessen Constr. v. Scotts Bluff Co. Hous. Auth.*, 217 Neb. 39, 43, 348 N.W.2d 418, 421 (1984); *Kohlbeck v. City of Omaha*, 211 Neb. 372, 318 N.W.2d 742 (1982).

These elements must be established by clear and convincing evidence. See *Five Points Bank v. Scoular-Bishop Grain Co.*, 217 Neb. 677, 350 N.W.2d 549 (1984).

In the present case there was simply no sufficient showing that the behavior of the State Bank of Scotia amounted to a false representation or concealment of material facts. The testimony revealed that the bank's officer made only general statements to Circle 76 or its representatives about Dale Nelsen's financial stability. The bank felt Nelsen had the capabilities and machinery to meet his fertilizer debt. It produced a property statement of Nelsen's assets and liabilities as of January 19, 1981, which accurately reflected the collateral subject to the bank's security agreement.

The bank informed Circle 76 that the bill for the Nelsens' 1980 fertilizer costs would be settled as soon as that corn crop was sold. There was no clear evidence the bank represented to Circle 76 that it would subordinate its interest to assure Circle 76 would have a first lien on Nelsen's 1981 corn crop. At most, it gave its opinion that Nelsen was relatively secure.

Such an opinion is not without support on the record. Nelsen had been a customer of the bank since 1977, was doing custom farming in addition to the farming he was doing on his own, and he had, to the best of the belief of the bank, land in Minnesota on which he was drawing payments. The bank had no way of knowing that Nelsen's crop would be flooded out in 1981, that 1,170 acres would be planted but only 921 acres harvested, and that irrigated corn would produce only 50 to 60 bushels per acre.

The bank's opinion, in and of itself, is insufficient to invoke equitable estoppel. This situation is analogous to the one presented in *Albion Milling Co. v. First Nat. Bank of Weeping Water*, 64 Neb. 116, 89 N.W. 638 (1902), where the plaintiff creditor charged the debtor's bank with fraud for misrepresenting the debtor's ability to pay his bills.

The court refused to hold the bank liable, saying that where the bank gave an honest opinion as to the financial worth and standing of a third party as to whether the third party was entitled to credit, based on information known to the bank, the mere fact that the bank was mistaken in its opinion would not make it liable for fraud or deceit. The positive assertion of fact, and not the mere expression of an opinion, is necessary to constitute an estoppel. *Talbott v. City of Lyons*, 171 Neb. 186, 105 N.W.2d 918 (1960).

Further, Circle 76 did not lack the knowledge or means of knowledge of the truth as to the facts in question. The company manager had checked the Rock County Courthouse files against Nelsen before delivering the fertilizer. He knew the bank had an outstanding security interest against Nelsen's property. Further, Circle 76's bank had access to the same records as the State Bank of Scotia for purposes of ascertaining Nelsen's creditworthiness.

Reviewing the record as a whole, Circle 76 was not in a

position of total reliance upon the bank's representations sufficient to find estoppel. Its assignment of error is without merit.

With respect to the first claim advanced by Mid-State, the district court was correct in refusing to consider whether the bank's security interest and Mid-State's lien covered the same land. That there may have been a variance in the land description was never raised in the pleadings.

The purpose of pleadings is to frame the issues upon which a cause is to be tried. *Bashus v. Turner*, 218 Neb. 17, 352 N.W.2d 161 (1984). The issues in a given case will be limited to those which are pleaded. *Omaha Fish & Wildlife v. Community Refuse*, 213 Neb. 234, 329 N.W.2d 335 (1983).

The failure of Mid-State to raise the variance in the description of Section 11 of Nelsen's land in the bank's security agreement and its own lien amounts to an admittance that the land in question was the same in both documents. See *Dinkel v. Hagedorn*, 156 Neb. 419, 56 N.W.2d 464 (1953).

The bank's burden in this case was to prove each element of its case which was not expressly or impliedly admitted by the defendant Mid-State. *Associates Finance Co. v. Teske*, 190 Neb. 747, 212 N.W.2d 572 (1973). There was no need for the bank to establish the land covered by its security agreement, since no conflict in this regard was raised in the pleadings. The bank met its other burden of proof by establishing it had a perfected security agreement, Neb. U.C.C. §§ 9-302 to 9-306 (Reissue 1980), covering the collateral in question, Neb. U.C.C. § 9-203 (Reissue 1980), which was timely filed.

Mid-State next questions the priority of the bank's security interest over its petroleum products lien. Evidence disclosed that the bank perfected its security interest by filing a financing statement and security agreement on July 10, 1980, with the Rock County clerk's office, and with the Nebraska Public Service Commission on November 19, 1980. The agreement described the collateral as "[a]ll farm products including but not limited to . . . crops . . . now owned or her after [sic] acquired," and described the land on which the secured crops were to be grown. It was signed by Dale Nelsen.

The security interest was taken to secure a loan made to the

Nelsens in the amount of $118,225.34 on June 19, 1980. By January 1, 1981, the Nelsens' indebtedness to the bank rose to $124,725.34, and by December 1, 1981, the Nelsens owed $131,250 as the result of new advances.

Mid-State's petroleum products lien was filed on December 2, 1981, for nonpayment of petroleum products. Corn from Nelsen was delivered to Mid-State for storage in the month preceding the filing of the lien. Around Christmas 1981, Nelsen and Mid-State had an oral agreement for Mid-State to purchase Nelsen's corn and credit his account. However, the actual transfer did not occur until January 7, 1982, and thus the petroleum products lien was not foreclosed until that time.

In considering the applicability of the U.C.C. in this case, Mid-State argues that either § 9-312(2) or § 9-310 applies.

Section 9-312(2), as explained *infra*, is inapplicable because it deals with the relative priority of competing security interests in crops and not the priority between a security interest and a statutory lien. Neb. U.C.C. § 9-104(c) (Reissue 1980) provides that the U.C.C. is inapplicable to liens except as provided in § 9-310. That § 9-310 applies in some cases where a lienholder is in possession of collateral does not automatically trigger the code's application in situations other than that defined in § 9-310. This first argument is without merit.

Section 9-310 provides:

> When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise.

Comment 1 to § 9-310 says the liens in question are those which improve or enhance the value of the collateral.

If the statute creating the lien is silent, even though it has been construed by decision to make the lien subordinate, this section provides a rule of interpretation that the lien should take priority over the security interest. § 9-310, comment 2; *Mousel v. Daringer*, 190 Neb. 77, 206 N.W.2d 579 (1973).

Mid-State claims that its petroleum products lien falls within

the purview of § 9-310 because it provided services and materials to Nelsen which enhanced the value of the collateral and it is a lienor in possession. However, for § 9-310 to apply, it must be determined if Mid-State met all the requirements of §§ 52-901 et seq. to create a valid petroleum products lien.

Section 52-902 requires a provider of products to file his lien within 6 months after furnishing the fuel or lubricants. Section 52-903 requires that proceedings to foreclose such a lien shall be instituted within 30 days after the filing of the lien.

Here, the lien was filed on December 2, 1981, but not foreclosed until January 7, 1982. While there was an oral agreement to do so around Christmas, the fact remains that no formal transaction took place within the 30 days' statutory period. As the lien was not foreclosed on time, it was not a valid lien within the meaning of § 9-310, and this section does not apply.

As Mid-State's lien was not superior to the bank's security interest, the district court did not err in granting the bank priority status.

Finally, Mid-State challenges the district court's award of prejudgment interest on the corn proceeds held by Mid-State. The general rule governing prejudgment interest is that " 'prejudgment interest may be recovered on claims that are liquidated. A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion. . . .' " *Land Paving Co. v. D. A. Constr. Co.*, 215 Neb. 406, 407, 338 N.W.2d 779, 780 (1983).

" 'Where a reasonable controversy exists as to the plaintiff's right to recover or as to the amount of such recovery, the claim is generally considered to be unliquidated and prejudgment interest is not allowed. [Citation omitted.]' " *Land Paving Co., supra* at 407, 338 N.W.2d at 780; *Classen v. Becton, Dickinson & Co.*, 214 Neb. 543, 334 N.W.2d 644 (1983); *Slusarski v. American Confinement Sys.*, 218 Neb. 576, 357 N.W.2d 450 (1984).

In the present case the district court awarded judgment to the State Bank of Scotia in the amount of $143,750, the amount of the Nelsens' outstanding debt at the time their credit was

renewed on December 20, 1982. There is no doubt the bank's claim was liquidated. Neither is there a reasonable controversy over the bank's right to recover this amount. The debt was due and it was the only claimant with a valid security interest covering all of the Nelsens' property. The evidence was also clear that Mid-State held corn from the Nelsens worth $34,412.50, which was subject to the bank's security interest.

The trial court allowed the bank to recover principal in the amount of $34,412.50 and interest of $8,023.73, dated from the day of transfer of the corn to Mid-State, January 7, 1982. Although we have some question as to whether the court applied the correct interest rate, it was within both the statutory limitations and the provisions of the written instrument, and the bank claimed no error as to that amount. Accordingly, we will not disturb that finding.

The judgment of the district court was correct and is affirmed.

AFFIRMED.