**In the Matter of Leland and Jeanette SCHLOTE, Debtors.**

**Bankruptcy No. 93–81699.**

United States Bankruptcy Court, D. Nebraska.

Jan. 18, 1995.

**316**

John Harmelink, Harmelink & Fox Law Office, Yankton, SD, for debtors.

Laurie Barrett, Omaha, NE, for FmHA.

William Bianco, Kennedy, Holland, DeLacy & Svoboda, Omaha, NE, for Osmond Coop.

Richard Lydick, Trustee, Omaha, NE.

### MEMORANDUM

TIMOTHY J. MAHONEY, Chief Judge.

Hearing was held on confirmation of plan. Appearing on behalf of debtors was John Harmelink of Harmelink & Fox Law Office, Yankton, South Dakota. Appearing on behalf of FmHA was Laurie Barrett of Omaha, Nebraska. Appearing on behalf of Osmond Coop was William Bianco of Kennedy, Holland, DeLacy & Svoboda, Omaha, Nebraska. Appearing as trustee was Richard Lydick of Omaha, Nebraska. This memorandum contains findings of fact and conclusions of law required by Fed.Bankr.R. 7052 and Fed. R.Civ.P. 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A).

### Background

The debtors filed for Chapter 12 bankruptcy relief on October 18, 1993. The Chapter 12 plan under consideration applies the future income of the debtors to the claims of the debtors' creditors over five years. The general unsecured class of claimants will receive approximately 78% of the present value of their claims over the duration of the plan.

One creditor, Osmond Cooperative, Inc. (Osmond), has objected to the debtors' proposed plan. Osmond takes the position that the debtors have failed to comply with 11 U.S.C. § 1222(a) because the plan does not provide for the secured portion of Osmond's claim. Osmond believes that of its total claim of $13,360.88, $12,506.76 of this amount is secured by the debtors' corn crops.

At the hearing on the confirmation of the debtors' plan, Osmond took the position that its security interest in the debtors' crops included the 1993 crops which were "growing" when Osmond's fertilizer and chemical lien in the debtors' crops expired. The debtors argued that Osmond agreed to subordinate its fertilizer lien in the debtors' 1992 corn crops to the Commodity Credit Corporation (CCC) and that Osmond's fertilizer lien expired before attaching to the debtors' 1993 crops. The Court ordered the parties to brief this issue and took the matter under advisement.

### Decision

Osmond has a security interest in the 1993 corn crop which was growing at the time Osmond's fertilizer and chemical lien expired. The definition of "produced" as used in Section 52–1101 of the Nebraska Revised Statutes encompasses crops which are growing at the time the fertilizer lien expired.

### Discussion

#### A. Statutory Authority

 Osmond was authorized to file a fertilizer and agricultural lien on the debtors' corn crops pursuant to Section 52–1101 of the Nebraska Revised Statutes, which provides:

A person, including a firm or corporation, who shall contract or agree with another (1) to furnish any fertilizer, soil condition-

er, or agricultural chemical, (2) to furnish machinery and equipment for the application of such products, or (3) to perform work or labor in the application of such products shall have a lien for the agreed charges, ..., *upon crops produced within one year upon the land where such product was applied,* the machinery or equipment for application was used, or the work or labor of application was performed, and upon the proceeds from the sale of the crops.

NEB.REV.STAT. § 52–1101 (Reissue 1993) (emphasis added). Under Section 52–1101, a valid lien is created at the time the products, labor, or machinery is supplied. *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.,* 231 Neb. 288, 436 N.W.2d 151 (Neb.1989). The lien must be filed within sixty days, or although still a lien on a debtor's crops, the lien will lose its priority over subsequent lienholders. *Id.;* NEB.REV.STAT. § 52–1103 (Reissue 1993).

The dispute in this case is whether the language in Section 52–1101, which grants a lien upon the "crops produced within one year upon the land where such product was applied" includes crops which were "growing" at the time the one year expired or only applies to crops which were fully harvested and ready to be sold at the time the one year expired.

### B. *Findings of Fact*

The debtors purchased various farm products and services from Osmond from April 6, 1992 through July 1, 1992. On August 21, 1992, Osmond filed a fertilizer and agricultural chemical lien with the Knox County, Nebraska, Clerk, thereby perfecting a lien in the debtors' corn crop in compliance with Nebraska law. NEB.REV.STAT. § 52–1102 (Reissue 1993).

On January 15, 1993, Osmond subordinated its lien in the debtors' crops to the Commodity Credit Corporation (CCC). A farm storage note and security agreement was executed between the debtors and CCC on January 25, 1993. CCC was given a first lien in 10,277 bushels of the debtors' 1992 corn. The proceeds of the $16,487.28 loan from CCC were used to pay the claims of creditors of the debtors, including a portion of Osmond's claim.

Osmond's lien expired pursuant to Section 52–1101 on or about the first day of July, 1993. At the time of expiration, the 1993 crops were in the ground and growing, but were not yet mature or harvested.

### C. *Lien on 1993 Crops*

Nebraska case law addressing Section 52–1101, et al., has not defined the term "produced" as it is used in the statute. *See Commerce Savings Scottsbluff, Inc. v. F.H. Schafer Elevator, Inc.,* 231 Neb. 288, 436 N.W.2d 151 (Neb.1989); *Circle 76 Fertilizer, Inc. v. Nelsen,* 219 Neb. 661, 365 N.W.2d 460 (Neb.1985). Other sections of the Nebraska Revised Statutes which use the language "crops produced" also do not define how "produced" should be interpreted. NEB.REV. STAT. § 52–901 (Reissue 1993) (granting a petroleum products lien upon "all such crops produced" by the aide of the petroleum products); NEB.REV.STAT. § 52–1201 (Reissue 1993) (granting a seed or electrical power and energy lien in "all crops produced from the seed furnished or produced with the electrical power or energy furnished").

Neither the parties nor the Court could find a statute in another state which employed both the "crops produced" and the "within one year" language. Most statutes granting liens in exchange for products or services which provide a farmer with operational inputs specifically limit the lien to the season of crops produced directly as a result of the use of the product or service. In the Nebraska Revised Statutes, Sections 52–901 and 52–1201, dealing with petroleum liens and seed or electrical power and energy liens, are examples of these types of statutory liens granted in exchange for operating inputs, which enable a farmer to engage in farming operations for the season.

However, the fertilizer lien statute, instead of granting a lien in the crops produced from a particular harvest, like seed, energy and petroleum liens, grants a lien in all "crops produced within one year" language on the land where the fertilizer or chemical is applied. NEB.REV.STAT. 52–1101 (Reissue 1993). Even though this lien is an operational input lien like the other liens, the use of

the "within one year" in Section 52–1101 suggests that the Nebraska legislature intended that fertilizer and chemical liens are different in duration than liens that are limited to one crop season.

In *Commerce*, the Nebraska Supreme Court stated, while interpreting a different clause in Section 52–1101, that the general rule governing the statutory construction and interpretation of the section is:

> [I]n the absence of anything indicating to the contrary, statutory language is to be given its plain and ordinary meaning; this court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. Furthermore, it is not within the province of this court to read a meaning into a statute which is not warranted by the legislative language; neither is it within the province of this court to read anything plain, direct, and unambiguous out of a statute. In construing a statute it is presumed that the Legislature intended a sensible rather than an absurd result.

*Commerce*, 231 Neb. at 300–01, 436 N.W.2d 151 (quotations omitted).

The "within one year" clause of Section 52–1101 modifies "crops produced" to cause "produced" to include the entire crop production process, not just harvested crops. The debtors' suggestion that "crops produced" only applies to harvested crops renders the "within one year" language of Section 52–1101 superfluous. Under the debtors' interpretation, Section 52–1101 would be applied essentially in the same manner as the petroleum lien and seed and energy liens, even though the language suggests that fertilizer liens are to be treated differently from the other liens. It seems more logical that the language "crops produced within one year" should apply to the crops which were growing at the time Osmond's lien expired in June or July of 1993. To exclude crops growing after the initial harvest but within one year of application of the fertilizer would cause the phrase "one year" to mean substantially less than one year.

The debtors' last argument is that the plain meaning of the word "produced" causes the lien only to attach to crops which were harvested within one year, so that the "within one year" language only applies to harvested crops. In support of this position, the debtors cite the definition of "produced" which is listed in Black's Law Dictionary: "To yield, as revenue. Thus, sums are "produced" by taxation, not when the tax is levied, but when the sums are collected." *See* BLACK'S LAW DICTIONARY 1088 (5th ed. 1979).

However, if one is inclined to rely on a dictionary definition, one can look to additional definitions of "produced" in Black's Law Dictionary:

> To bring forward; to show or exhibit; to bring into view or notice; as, to present a play, including its presentation in motion pictures. To produce witnesses or documents at trial in obedience to a subpoena ...; or to be compelled to produce material subject to discovery rules.... To make, originate, or yield, as gasoline. To bring to the surface, as oil. To yield, as revenue....

BLACK'S LAW DICTIONARY 1088 (5th ed. 1979); *see also* RANDOM HOUSE COLLEGE DICTIONARY 1056 (Revised 1st ed. 1982) ("1. to bring into existence. 2. *Econ.* to create (something having exchange value). 3. to bring forth; give birth to.... 5. *Finance.* to cause to accrue, as income ... 9. to create, bring forth, or yield offspring, products, etc."). WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 938 (1990) ("2. to give birth or rise to.")

The term "produced" as used in the context of "crops produced within one year" refers to the entire process—from planting to harvest and storage. The dictionary definitions of "produced" include not only the final result of a crop production process, but also the growing stage of the crops. The debtors' 1993 crops were planted in May 1993, and the lien expired in June or July of 1993. Because the production process had begun, Osmond's fertilizer lien attached to the 1993 crops which were growing within one year of the perfection of the lien.

### Administrative Matters

Since the Court has found that Osmond has a lien in the 1993 crops and a subordinated lien in the 1992 crops, the debtors shall amend their Chapter 12 plan to reflect Os-

mond's secured status and shall disclose in the plan the amount and value of the corn subject to the lien.

Separate journal entry to be entered.